[No. E033242. Fourth Dist., Div. Two. Dec. 31, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ALISTAR INSURANCE COMPANY et al., Defendants and Appellants.

COUNSEL

Hayes Simpson Greene, Robert W. Hicks and Daniel W. Towson for Defendants and Appellants.

Grover Trask, District Attorney, and Elise J. Farrell, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

**GAUT, J.**—Defendants and appellants Alistar Insurance Company and Ray's Bail Bonds (collectively, Alistar) appeal from an order denying their motions to extend the 180-day forfeiture period for two bail bonds, and from the summary judgment on bail forfeiture granted in favor of the People of the State of California.

Alistar contends it provided sufficient evidence showing good cause for granting Alistar additional time to locate the defendant, Rodrigo Gamez, and return him to custody. We agree and reject the People's contention that denial of the motions was justified due to issuance of the bonds without sufficient collateral.

We reverse the order denying Alistar's motions to extend the 180-day period and the summary judgment entered in favor of the People.

### 1. Facts and Procedural Background

In February 2002, defendant Rodrigo Gamez was arrested and charged with possessing ammunition in violation of Penal Code section 12316, subdivision (b)(1)[1] (case No. RIF102016). He pleaded guilty to the offense. Gamez also admitted that, by committing the offense, he was in violation of his probation (case No. RIF090296) for convictions in 2000.[2] Alistar issued two bail bonds on defendant's behalf, totaling $30,000 (bond Nos. AL5-74001735 and AL25-74001745).

The trial court set defendant's sentencing hearing for the ammunition and probation violation offenses on April 26, 2002. Defendant failed to appear at the hearing. As a consequence, on April 26, 2002, the court ordered the bail

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] His convictions in 2000 were for carrying a concealed weapon in violation of section 12025 and possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a).

bonds forfeited and issued a bench warrant for defendant's nonappearance. That same day the court served by mail notice of the forfeitures.

On October 22, 2002, Alistar filed two motions to extend the 180-day forfeiture period for the two bail bonds under section 1305.4. The People opposed the motions on the ground the bonds were not secured by sufficient collateral.

On December 6, 2002, the court denied Alistar's motions and entered summary judgment on the two bonds under section 1306.

### 2. Timeliness of Motions for Extension

The People argue the court lacked jurisdiction to decide Alistar's extension motions because the motions were not heard and determined within 30 days after expiration of the 180-day period, as required under section 1305.

Sections 1305 and 1305.4 provide a 180-day period, plus five days for service of the notice of forfeiture by mail, running from the mailing of notice of forfeiture, within which a surety may obtain relief from forfeiture or exoneration of bail. Section 1305.4 allows the surety to file a motion, based upon good cause, for an order extending the 180-day period. Section 1305, subdivision (i) provides that the motion must be filed before expiration of the 180-day period but "may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause."[3]

In *People v. Wilshire Ins. Co.*,[4] the trial court minute orders failed to reveal whether good cause was shown for several continuances of the extension motion hearing beyond the 30-day period. The *Wilshire* court concluded, "Nevertheless, the superior court being a court of general jurisdiction, we must presume that good cause was shown. A judgment or order of a superior court is presumed to be correct; all intendments and presumptions consistent with the record must be indulged in favor of its orders and judgments. [Citations.]"[5]

Likewise, in *County of Los Angeles v. Nobel Ins. Co.*,[6] even though the record was unclear as to whether there was good cause for continuing the

---

[3] Section 1305, subdivision (i); *County of Los Angeles v. Nobel Ins. Co.* (2000) 84 Cal.App.4th 939, 943 [101 Cal.Rptr.2d 320].

[4] *People v. Wilshire Ins. Co.* (1976) 61 Cal.App.3d 51 [132 Cal.Rptr. 19].

[5] *People v. Wilshire Ins. Co., supra,* 61 Cal.App.3d at page 57.

[6] *County of Los Angeles v. Nobel Ins. Co., supra,* 84 Cal.App.4th 939.

surety's extension motion beyond the 30-day period, the *Nobel* court presumed there was good cause: "This record suggests that the court acquiesced in continuances to accommodate the parties and to allow for a full presentation of appellant's motion. We conclude that the record, as a whole, supports the findings of good cause by the court set out in each of the minute orders . . . ."[7]

In the instant case, the notice of forfeiture was mailed on April 26, 2002. The 180-day period (plus five days for mailing)[8] expired on October 31, 2002. The 30-day period within which the motions were required to be heard and decided expired on November 30, 2002. Alistar timely filed its motions for an extension on October 22, 2002, but noticed the motions to be heard on December 6, 2002, after expiration of the 30-day period.

Here, unlike in *Wilshire* and *Nobel*, Alistar initially set the motion hearings beyond the 30-day period and the court heard and decided the motions on that date. There is nothing in the record revealing why the motions were set beyond the 30-day period and the People did not object to the hearing date. We thus presume there was good cause for hearing the motions six days beyond the 30-day period.

Furthermore, the People waived any objection to the hearing date by not raising the matter in the trial court. Had the People done so, the matter could have been heard a week earlier, if such calendaring was possible, or the court could have addressed the issue on the record as to whether there was good cause for setting the motions beyond the 30-day period.

" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' "[9]

We reject the People's contention that the trial court was divested of jurisdiction to hear Alistar's motions since they were heard after expiration of the 30-day period. The court still had subject matter jurisdiction over the matter at the time of the hearing on Alistar's extension motions. Summary

---

[7] *County of Los Angeles v. Nobel Ins. Co., supra,* 84 Cal.App.4th 939, 944.

[8] *People v. Ranger Ins. Co.* (2002) 99 Cal.App.4th 1229, 1232 [122 Cal.Rptr.2d 371].

[9] *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, footnote 1 [151 Cal.Rptr. 837, 588 P.2d 1261], italics omitted.

judgment had not been entered, and pursuant to section 1306, subdivision (c), the court had retained jurisdiction until entry of summary judgment or until 90 days after the date the court was required to enter summary judgment.[10] Accordingly, we conclude the People waived their objection to the motions being heard and decided six days after expiration of the 30-day period.

### 3. Good Cause for Granting Motions for an Extension

Alistar argues the trial court abused its discretion in denying Alistar's motions for an extension. The court stated the motions were denied on the grounds good cause had not been shown, and based on "[a]ny and all legal reasons."

■ Section 1305.4 allows a surety to file a motion, based upon good cause, for an order extending the 180-day forfeiture period. ■ We apply an abuse of discretion standard when reviewing a ruling on such a motion.[11]

(4) The court in *People v. Ranger Ins. Co.*[12] states that establishing "good cause" within the meaning of section 1305.4 requires (1) an explanation of what efforts the surety made to locate the defendant during the initial 180 days, and (2) why such efforts were unsuccessful.[13]

In *Ranger 1*, the court concluded the surety had not established good cause for extending the 180-day period. The only evidence provided was a declaration by an investigator stating that he had located a "positive address" in Mexico for defendant, the defendant was a member of a particular band, and " 'after all attempts by the bail bond agency to contact the defendant failed, this case was forwarded to our agency for the investigation.' "[14]

The court in *Ranger 1* stated that, if the surety wanted to protect the bond money, it should have begun investigating right after forfeiture and should have provided a detailed statement of its efforts. The declaration did not state what efforts had been made, when they were made, when the investigator received the file, how or by what process the investigator located the defendant at a "positive address," how the investigator knew defendant had been at the address, or whether the defendant was still there. The *Ranger 1* court concluded, "The cursory declaration that was filed in this matter is

---

[10] See *People v. Ranger Ins. Co., supra,* 99 Cal.App.4th 1229, 1235.

[11] *People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 679 [96 Cal.Rptr.2d 892] (*Ranger 1*).

[12] *Ranger 1, supra,* 81 Cal.App.4th 676 [96 Cal.Rptr.2d 892].

[13] *Ranger 1, supra,* 81 Cal.App.4th at page 681.

[14] *Ranger 1, supra,* 81 Cal.App.4th at pages 678, 681–682.

incomplete. The trial court's ruling did not exceed the bounds of reason. Instead, we find the decision inherently reasonable."[15]

Here, unlike in *Ranger 1*, Alistar's investigator provided a relatively detailed declaration stating what efforts had been made to locate defendant, when the investigator received the file and began investigating, and why the investigator believed defendant was still in the area. Although Baker did not begin investigating immediately after notice of forfeiture, he did not wait until right before expiration of the 180-day period. He began investigating four months before expiration of the 180-day period. In addition his declaration contains a far more detailed statement of his investigative efforts than the *Ranger 1* declaration.

Baker states in his declaration that he was assigned to locate defendant on July 2, 2002, approximately two months after defendant's nonappearance and forfeiture of the bonds. On July 14, 2002, he called the telephone numbers on the bail bond application for defendant and defendant's brother, Tony Villa. Both numbers were disconnected. Baker then attempted to call Villa at the work number listed for him on the bail bond application. Baker also left a phone message for Villa's work supervisor.

In addition, Baker ran a database search and found a possible new address for defendant in Moreno Valley; he checked the address and discovered defendant no longer lived there; he then contacted the Moreno Valley Police Department "S.E.T. Team," which handled warrants; Baker advised Detective Duke Viveros of the matter and provided him with the information Baker had; and Baker went to defendant's sister's address in Moreno Valley. Defendant's sister said she would pass on to defendant and Villa the information Baker gave her.

On September 13, 2002, Villa called Baker and said defendant was in Mexico and would not be returning. He added that if Alistar called Villa, he would make arrangements to pay off the bail bonds, and, even if he knew where his brother was, he would not tell Baker.

Baker stated in his declaration he believed that defendant remained in the Moreno Valley area because defendant's sister would have told Baker defendant was in Mexico if he was there. Rather, she said she would pass on Baker's message. Baker concluded that if granted an additional extension, he would be able to return defendant to custody.

Alistar provided sufficient evidence that its investigator, Baker, had made a concerted effort to locate defendant. The two-month delay in commencing the

---

[15] *Ranger 1, supra,* 81 Cal.App.4th at page 682.

investigation is not a sufficient basis for denying Alistar's motions. Baker's declaration shows that he made a reasonable attempt to locate defendant, although it might have been advantageous to begin the investigation sooner.

The People, on the other hand, failed to provide any evidence refuting that good cause existed for granting an extension. There was thus no reasonable justification for not allowing Alistar additional time to locate defendant, particularly since the law disfavors forfeitures and favors returning to custody fleeing defendants. Sections 1305 and 1306 are to be strictly construed in favor of the surety to avoid harsh results.[16]

Denial of Alistar's motions created a disincentive to continue searching for defendant and provided no benefit other than forfeiture of the bond money to the State, which is not the purpose of the forfeiture provisions. " 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court. In matters of this kind there should be no element of revenue to the state nor punishment of the surety. [Citation.]' [Citation.]"[17]

The only argument the People raised in the trial court in opposition to Alistar's extension motions was the claim that bail bond agents, including Alistar, were issuing bonds that were not secured by collateral. But this alone is not a valid basis for finding there was no good cause for granting an extension. There was no evidence the bonds in the instant case were unsecured by collateral or the collateral was insufficient. In addition, the sufficiency of the bond collateral is a matter that could have been addressed at the time of issuance of the bond.

Furthermore, Baker's declaration indicates that there was collateral for the bond since Villa told Baker he was willing to pay off the bail bonds, and it is pure speculation as to whether the collateral for the $30,000 bonds was sufficient.

We thus conclude the trial court abused its discretion in denying Alistar's motions for an extension of the 180-day period.

## 4. Disposition

We reverse summary judgment entered against Alistar Insurance Company and Ray's Bail Bonds. We direct the trial court on remand to vacate its order denying Alistar Insurance Company and Ray's Bail Bonds' motions to extend

---

[16] *People v. Ranger Ins. Co., supra,* 99 Cal.App.4th at page 1234.
[17] *People v. Ranger Ins. Co., supra,* 99 Cal.App.4th at page 1234.

time to set aside bail forfeiture on bond Nos. AL2574001745 and AL574001735, and grant the motions for a 180-day extension. In the event, pursuant to the summary judgment, Alistar Insurance Company and/or Ray's Bail Bonds has paid the State of California for the forfeiture of the bonds, including costs and interest, the trial court is directed to order the State to repay this sum and order Alistar Insurance Company and Ray's Bail Bonds to reissue the bonds. Alistar Insurance Company and Ray's Bail Bonds are awarded their costs on appeal.

The People's request for judicial notice filed on August 5, 2003, considered concurrently with this appeal, is denied. The documents in question were not before the trial court and therefore this court will not consider them.

Richli, Acting P. J., and King J., concurred.

On January 23, 2004, the opinion was modified to read as printed above.