[No. C049492. Third Dist. Mar. 28, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
ACCREDITED SURETY AND CASUALTY CO., INC., et al., Defendants
and Appellants.

1352

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendants and Appellants.

Robert A. Ryan, Jr., County Counsel, and John Reed, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**ROBIE, J.**—The trial court denied defendant Accredited Surety and Casualty Co., Inc. (Accredited), an extension of time to vacate the forfeiture of a bail bond under Penal Code[1] section 1305.4. On appeal, Accredited contends the trial court erred because Accredited showed it made a reasonable attempt to locate the defendant whose release was secured by the bond. We conclude the trial court abused its discretion in determining there was no showing of good cause to extend the time period, so we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2004, Accredited posted a bail bond in the amount of $100,000 to secure the release of Gregory Lee Thomas from custody. After pleading no contest to a charge of possession of cocaine base for sale, Thomas failed to appear at a sentencing hearing on July 21, 2004. The trial court declared the bail bond forfeited. The clerk mailed a notice of forfeiture to Accredited on July 29, 2004. The 185th day from the July 29 mailing was January 30, 2005.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On January 26, 2005, Accredited moved to extend the time to vacate the forfeiture pursuant to section 1305.4.[2] Accredited filed the declaration of Herbert J. Tillman, a bail agent, in support of its motion. Tillman's declaration detailed his attempts to locate Thomas. The declaration contained seven entries describing information Tillman received and actions he took after receiving the notice of forfeiture.

On August 3, Tillman learned Thomas was staying with a friend and would be returning to that location. He conducted surveillance for six hours, and he stopped several subjects thought to be Thomas.

On August 24, Tillman learned Thomas was residing with family members just outside the Sacramento area. He contacted local authorities, and he and the authorities put the apartment and surrounding area under surveillance. After four hours of covert activity, they entered the apartment and discovered Thomas had fled. Tillman later determined Thomas had been tipped off by family members.

On September 3, Tillman hired a fugitive recovery specialist to assist him with returning Thomas to custody. They learned from a reliable source about two possible local addresses for Thomas. After surveillance and investigation, both addresses were found to be negative.

On September 17, after "canvassing" all of Thomas's relatives, Tillman determined Thomas had fled to Illinois. He contacted Thomas's family in Illinois and verified Thomas had been there. However, he found it difficult to find credible information and develop good leads. Tillman did determine Thomas was in the local drug scene and was selling drugs in and around Chicago.

Between October 18 and November 12, Tillman learned Thomas had stolen a check from his chiropractor, had purchased a brown vehicle, and had been seen coming and going from a Sacramento home.

---

[2] When a defendant fails to appear, the court declares his or her bail forfeited. (§ 1305, subd. (a).) The surety then has 180 days from notice of forfeiture to produce the defendant or show that he or she is otherwise in custody. (*Id.*, subd. (c)(1).) Doing so vacates the forfeiture. (*Ibid.*) Failure to produce the defendant results in a summary judgment against the surety. (§ 1306.) The 180-day period is extended by five days for mailing of the notice of forfeiture. (§ 1305, subd. (b).) The surety may file a motion, based upon good cause, for an order extending the forfeiture period. (§ 1305.4.) The motion must contain a declaration that "states the reasons showing good cause to extend that period." (*Ibid.*)

On December 10, Tillman learned Thomas was being aided by a female driving a blue Chevrolet. The female was "connected to" a home Thomas had been seen frequenting. Tillman hired California Patrol Agency in an attempt to apprehend Thomas. "Surveillance was on-going at that time."

On January 6, a family member informed Tillman that Thomas was hiding out in an apartment complex in South Sacramento. The Sacramento police and the Sacramento Sheriff surrounded an apartment, but Thomas was gone. They learned he was in an area apartment complex.

The declaration concluded by stating Tillman has known Thomas and his family for Thomas's entire life. He felt confident he could apprehend Thomas with additional time because Thomas had few places to go and his family was actively cooperating.

The trial court denied Accredited's motion for an extension of time on February 10, 2005. The court stated, "I've read the declaration. I don't think any cause has been shown." On February 10, 2005, the court ordered entry of summary judgment on the forfeiture of the bail bond.

## DISCUSSION

### I

*Arguments Raised on Appeal*

Accredited contends the trial court abused its discretion by denying Accredited's motion for an extension of the 180-day forfeiture period. Accredited claims section 1305.4 requires a court to find good cause and grant an extension as long as the surety has shown that a reasonable attempt to locate the defendant has been made. Accredited further argues that the law abhors forfeitures, so courts should strictly construe the statute's good cause requirement in favor of the surety. Finally, Accredited analogizes the Tillman declaration to the declaration in *People v. Alistar Ins. Co.* (2003) 115 Cal.App.4th 122 [9 Cal.Rptr.3d 497] (*Alistar*), in which the Fourth Appellate District determined the trial court abused its discretion by denying a section 1305.4 motion. (*Alistar,* at p. 129.)

On the other hand, the People contend the trial court did not abuse its discretion by denying Accredited's motion. They argue the information in the Tillman declaration was too deficient in detail to show good cause for an

extension of the forfeiture period because the declaration did not sufficiently explain Tillman's attempts to capture Thomas or why those efforts were unsuccessful. The People analogize the Tillman declaration to the declaration in *People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 682 [96 Cal.Rptr.2d 892] (*Ranger*), in which the Second Appellate District determined the trial court did not abuse its discretion by denying a section 1305.4 motion.

## II

### *The* Ranger *and* Alistar *Decisions*

■   Only two published California opinions address the issue of whether good cause exists to extend the forfeiture period under section 1305.4: *Ranger* and *Alistar*. The court in *Ranger* was the first to interpret the good cause requirement of section 1305.4. The *Ranger* court explained that extensions beyond the automatic 180-day forfeiture period are not automatic. (*Ranger, supra,* 81 Cal.App.4th at p. 681.) The surety must earn additional time by showing good cause, which means an explanation of: (1) what efforts the surety made to locate the defendant; and (2) why those efforts were unsuccessful. (*Ibid.*)

Employing its standard, the *Ranger* court determined the surety's declaration in that case was cursory and incomplete. (*Ranger, supra,* 81 Cal.App.4th at p. 682.) The declaration merely stated that an investigation had produced a "positive address" for the defendant in Mexico and that he was a member of a band. (*Id.* at pp. 683–684, appen.) It did not describe what efforts the bond agent made, when he made them, or how he was able to locate the defendant. (*Id.* at p. 682.) It also did not explain what a "positive address" was; how the agent found it; how he knew it was a good address; whether it was still good; and why it was relevant the defendant was in a band. (*Ibid.*) Therefore, the trial court's ruling that there was no good cause for an extension did not exceed all bounds of reason. (*Ibid.*)

The *Alistar* court, on the other hand, determined the trial court's denial of an extension under section 1305.4 was an abuse of discretion. (*Alistar, supra,* 115 Cal.App.4th at p. 129.) The court used the *Ranger* standard, stating that establishing good cause requires an explanation of what efforts the surety made to locate the defendant and why those efforts were unsuccessful. (*Alistar,* at p. 127.)

The declaration in *Alistar* was "relatively detailed." (*Alistar, supra*, 115 Cal.App.4th at p. 128.) The court determined that it was "far more detailed" than the declaration in *Ranger*. (*Alistar*, at p. 128.) Among other things, it stated the investigator made a series of phone calls to reach the defendant and his brother; conducted database searches and checked addresses; contacted the police department and spoke to a detective; contacted the defendant's sister; and talked to the defendant's brother, who told him the defendant was in Mexico. (*Ibid.*)

The investigator also stated he believed the defendant was in a certain area (Moreno Valley) because he had spoken to the defendant's sister. (*Alistar, supra*, 115 Cal.App.4th at p. 128.) He thought the sister would have told him the defendant was in Mexico if he were there; instead, she told him she would pass along the message to the defendant. (*Ibid.*) The investigator "concluded that if granted an additional extension, he would be able to return [the] defendant to custody." (*Ibid.*)

The appellate court concluded the facts amounted to a reasonable attempt to locate the defendant. (*Alistar, supra*, 115 Cal.App.4th at p. 129.) Therefore, the trial court abused its discretion in denying Alistar's motion for an extension of time. (*Ibid.*)

We read the *Ranger* standard, as applied in *Alistar*, as a requirement that the surety show its due diligence to locate a defendant and secure his or her presence in court. As the *Ranger* court noted, section 1305.4 does not "giv[e] a surety carte blanche to sit on its hands for six months and then come running into court at the last minute with a bare-bones declaration that leaves huge gaps in the facts, and expect a trial court to simply roll over and give an extension." (*Ranger, supra*, 81 Cal.App.4th at p. 682.) In order to show good cause for its extension, the surety must demonstrate that it diligently attempted to locate and capture the defendant during the initial 180 days.

While the reasons *why* efforts were unsuccessful are relevant to determine whether good cause has been shown, as Accredited points out, an effort to capture a defendant is often unsuccessful simply because the defendant was not captured. A surety cannot always know how or why a defendant avoids location and capture. It is more vital to the good cause inquiry, and therefore essential, that the surety shows it has been diligently attempting to capture the defendant during the 180 days.

## III

### *The Likelihood of Capture Given More Time*

The court in *Ranger* also said the appellate court must consider " ' "all circumstances" ' " in deciding whether the trial court abused its discretion in denying a request for an extension under section 1305.4. (*Ranger, supra*, 81 Cal.App.4th at pp. 679–680.)

These circumstances should include the reasonable likelihood the surety will capture a defendant if an additional 180 days is provided. Efforts by a surety during the first 180 days might not always translate into good cause for an extension if it is unclear that a defendant will likely be captured given more time. While the *Ranger* court was concerned that a surety would sit on its hands for 180 days and then come to court looking for an extension (*Ranger, supra*, 81 Cal.App.4th at p. 682), neither can the surety be entitled to another 180 days simply by demonstrating it exerted some effort. The inquiry must be prospective as well as retrospective; otherwise, an extension does not serve the statute's policy of returning fleeing defendants to custody. That policy is best served by the surety showing that another 180 days might be productive.

Without expressly articulating this requirement, the courts in both *Ranger* and *Alistar* were concerned about the likelihood of capture if the sureties were given an additional 180 days. In *Ranger*, the assumption that the defendant was in Mexico gave "no assurance such defendant might be placed in custody." (*Ranger, supra*, 81 Cal.App.4th at p. 681.) When distinguishing the declaration before it from the one in *Ranger*, the court in *Alistar* thought it important that the declaration before it stated "why the investigator believed defendant was still in the area." (*Alistar, supra*, 115 Cal.App.4th at p. 128.) Not only did he believe the defendant was still in the area, but the investigator was also in contact with the defendant's sister, who agreed to help him. (*Ibid.*) In essence, the declaration in *Alistar* showed there was a reasonable likelihood the surety would be able to locate and capture the defendant if given an additional 180 days.

In determining the proper standard of review for denial of an extension under section 1305.4, the *Ranger* court analogized to section 1050. (*Ranger, supra*, 81 Cal.App.4th at pp. 679–680.) Section 1050, subdivision (b), permits the continuance of a hearing in a criminal proceeding on a showing of good cause. A further analogy to that section is appropriate for

determining whether good cause exists for an extension of the forfeiture period under section 1305.4. When a party seeks a continuance for good cause under section 1050 to secure the attendance of a witness, the moving party must show "[t]hat the movant has exercised due diligence in an attempt to secure the attendance of the witness . . . [and] that it can be obtained within a reasonable time." (*Owens v. Superior Court* (1980) 28 Cal.3d 238, 251 [168 Cal.Rptr. 466, 617 P.2d 1098].) There, as here, the court must consider whether there is a reasonable likelihood of securing the attendance of the absent person.

## IV

### *The Law Disfavors Forfeitures*

█ Accredited makes much of the policy that the law disfavors forfeitures and favors returning fleeing defendants to custody, contending section 1305.4 should be strictly construed in favor of the surety because of this policy. (See *Alistar, supra,* 115 Cal.App.4th at p. 129.) We agree. " ' "The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court." ' " (*Ibid.*) Denial of an extension under section 1305.4 should involve neither a punishment of the surety nor an element of revenue for the state. (*Alistar,* at p. 129.)

Given the underlying policy of avoiding forfeitures in favor of bringing defendants before the court, a trial court, faced with a section 1305.4 motion for extension, should draw all inferences in favor of the surety. (*Alistar, supra,* 115 Cal.App.4th at p. 129.) The good cause showing under section 1305.4 is a low threshold for the movant. If the surety demonstrates good cause by showing due diligence in the initial 180 days, a reasonable likelihood of success of capturing the defendant in a subsequent 180 days, and any other relevant circumstances, the court should grant the motion.

## V

### *The Tillman Declaration*

Tillman's declaration described in sufficient detail his efforts to locate Thomas and apprehend him during the initial 180 days. It did so in more detail than the declarations in either *Ranger* or *Alistar.* Tillman did not "sit on

[his] hands," against which the *Ranger* court cautioned. (*Ranger, supra,* 81 Cal.App.4th at p. 682.) His efforts also amounted to more than the sufficient efforts to locate the defendant in the *Alistar* case.

At various times between August 3 and January 6, Tillman knew where Thomas was, what he was doing, and with whom he was consorting. Tillman conducted at least 10 hours of surveillance. He checked a total of six addresses for Thomas in the Sacramento area over the five months. On two occasions he secured the help of local police to capture Thomas. On the first, Thomas's family tipped him off and he fled before they entered an apartment; on the second, Thomas was "gone." Tillman contacted Thomas's family in Illinois. He also hired a fugitive recovery specialist and California Patrol Agency to help him. Although Thomas avoided capture the entire time, Tillman diligently attempted to apprehend him.

Similarly, Tillman's declaration provided reasonable assurances that he could bring Thomas to custody in another 180 days. Eighteen days before he signed his declaration, Tillman learned Thomas was at an apartment in Sacramento. Although his attempt to capture Thomas that day proved fruitless, he did learn Thomas was in an area apartment complex.

Even though he was not able to capture Thomas in the first 180 days, Tillman was able to consistently gather information about Thomas. He learned where Thomas resided at various times, with whom he associated, and what actions he had taken, such as stealing a check from his chiropractor. Nothing in the declaration suggested Tillman would not continue to gather this sort of information. The declaration also stated that Thomas's family was actively cooperating, that Thomas had few places to go, and that Tillman felt confident he could return Thomas to custody in another 180 days. The People offered no facts to counter these statements.

 Accredited, the surety here, showed due diligence during the initial 180-day period in attempting to capture Thomas. It also demonstrated a reasonable likelihood of bringing Thomas to custody in another 180 days. As a matter of law, this showing was sufficient to satisfy the good cause requirement of section 1305.4. Accredited was entitled to an extension of the forfeiture period; therefore, the trial court abused its discretion in denying Accredited's motion for an extension under section 1305.4.

## DISPOSITION

The denial of Accredited's motion to extend time for entry of summary judgment is reversed and the case is remanded to the trial court with directions to set aside its order denying Accredited's motion and enter a different order granting the motion. The trial court is also directed to vacate its entry of summary judgment and order the bail bond exonerated.[3] To the extent the surety was obligated to pay the forfeiture, the trial court is directed to refund all monies paid. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 27(a)(4).)

Scotland, P. J., and Butz, J., concurred.

---

[3] Thomas was returned to custody subsequent to the trial court's order denying Accredited's motion for extension of the forfeiture period. He was arrested within 180 days of the order. Therefore, Accredited is entitled to exoneration of the bond. (§ 1305, subd. (c)(1).)