Filed 10/18/13  County of Los Angeles v. Lexington Nat. Ins. Corp. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| COUNTY OF LOS ANGELES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEXINGTON NATIONAL INSURANCE CORPORATION,<br><br>    Defendant and Appellant. | B240244<br><br>(Los Angeles County<br>Super. Ct. No. SJ003703) |


APPEAL from a judgment of the Superior Court of Los Angeles County,

Martin Gladstein, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

E. Alan Nunez for Defendant and Appellant.

Office of the County Counsel, Ruben Baeza, Jr., Assistant County Counsel and

Joanne Nielsen, Principal Deputy County Counsel for Plaintiff and Respondent.

Defendant and appellant Lexington National Insurance Corporation (Lexington) appeals from the summary judgment of bail forfeiture entered in favor of plaintiff and respondent the County of Los Angeles. Lexington contends the trial court erred in denying the surety's motion for a second extension of the 185-day period in which Lexington could set aside the bail forfeiture. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2011, Lexington posted bail in the amount of $70,000 for the release of Francisco Javier Camacho (Camacho), who had been charged with unlawful assault weapon activity. Camacho was required to appear in court on April 4, 2011 for his arraignment. On April 4, 2011, Camacho came to court and spoke with his public defender, but left before his case was called. The court ordered the bail bond forfeited and served the notice by mail on Lexington on April 5, 2011. On October 3, 2011, Lexington filed a motion to extend the 180-day period within which Lexington had to return Camacho to the court's custody in order to obtain relief from forfeiture. The County did not oppose the motion. On October 20, 2011, the court granted the motion, and extended the forfeiture period by 90 days.

On January 18, 2012, Lexington filed a second motion to extend the forfeiture period. The motion was supported by a declaration by investigator Anthony R. Chiz, detailing his efforts to locate and apprehend Camacho. Chiz stated that he had worked as a "fugitive recovery person" since 1994 and had been involved in over 2,000 investigations and arrests. After he was assigned this case on July 12, 2011, he checked the police and court files, reviewed Camacho's employment history, and searched for

addresses associated with Camacho. He identified several addresses for Camacho and ran "data search information on the addresses and their occupants." On October 20, 2011, Chiz and his "team" did a "rolling-surveillance on [Camacho's] mother's new location" and "positively identified the mother, but did not see [the] defendant." On November 15, 2011, Chiz visited Camacho's "place of work," saw his "distinctive" "bright red" barber shop chair, and concluded "[w]e know he is there." Between October 25, 2011 and November 20, 2011, Chiz repeatedly went to "defendant's location" at "Moonbeam Ave[nue]" "to agitate the people there, which are family members." Camacho's sister-in-law told Chiz that "the defendant was leaving to visit family members, and would not be returning until after the holidays (around the 25th of January)" and "said she would call us when he gets there." Chiz noted that "[e]verything she has told us is accurate" and that "she doesn't like us coming to [the] house and letting the neighbors [k]now that we are looking for a fugitive." Chiz concluded that this case was "very difficult because the mother is protecting the defendant."

The County did not oppose the motion. The trial court found that the declaration was "essentially the same declaration I saw last time" and that "there [was] nothing in this declaration that indicates there is any possibilities . . . that within an extended period, the defendant could be brought into court." The court denied the motion for lack of good cause and entered summary judgment. Lexington's timely appeal followed.

3

## *CONTENTIONS*

Lexington contends that the trial court erred in denying its second motion to extend the 180-day forfeiture period because Lexington provided sufficient evidence establishing good cause for the extension.

## *DISCUSSION*

Penal Code[1] section 1305 provides that if, without sufficient excuse, a defendant fails to appear at an arraignment, the court shall order a forfeiture of the bond. The surety that posted the bond then has 180 days, plus five days for service of the notice of forfeiture by mail, to return the defendant to custody and have the forfeiture set aside and the bond exonerated. (Section 1305, subd. (c)(1).) If the 180-day time period expires without the forfeiture having been set aside, the court must enter summary judgment against the bail surety. (Section 1306, subd. (a).)

Section 1305.4 provides that the trial court may grant an extension of the 180-day time period for up to an additional 180 days upon a "showing of good cause." (Section 1305.4.) Good cause "means an explanation of what efforts [the surety] made to locate [the defendant] during the initial 180 days, and why such efforts were unsuccessful." (*People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 681.) "The good cause showing under section 1305.4 is a low threshold for the movant. If the surety demonstrates good cause by showing due diligence in the initial 180 days, a reasonable likelihood of success of capturing the defendant in a subsequent 180 days, and any other

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

relevant circumstances, the court should grant the motion." (*People v. Accredited Surety & Casualty Co., Inc.* (2006) 137 Cal.App.4th 1349, 1358.)

A denial of a surety's motion for an extension of time pursuant to section 1305.4 is reviewed for abuse of discretion. (*People v. Alistar Ins. Co.* (2003) 115 Cal.App.4th 122, 127.) "The trial court can only be said to have abused its discretion where its decision ' " 'exceeds the bounds of reason, all circumstances being considered. [Citation.]' " ' " (*People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 80.)

Lexington argues that the court abused its discretion in denying its second motion for an extension because Lexington had established "good cause" within the meaning of section 1305.4. However, Lexington's motion relied entirely on Anthony R. Chiz's declaration which only demonstrated sporadic efforts to locate Camacho. The only steps Chiz took to locate Camacho after the court granted the initial extension of the forfeiture period were: (1) conducting surveillance on Camacho's mother's house on October 20, 2011; (2) visiting Camacho's workplace on November 15, 2011; and (3) going to the "defendant's location" at Moonbeam Avenue an unspecified number of times between October 25, 2011 and November 20, 2011 to talk with family members and neighbors there. Chiz took no further action to locate Camacho up until January 11, 2012, when he signed his declaration.[2]

---

[2] Lexington argues that the court erroneously concluded that Chiz's declaration was "essentially the same declaration" that supported the first motion for an extension. However, we cannot evaluate this argument because Lexington has not included the first motion or supporting declaration in the record. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 ["appellants . . . bear the burden of affirmatively showing error by an adequate record. (Citation.).].)

Even assuming that Chiz demonstrated due diligence, there is no evidence of a reasonable likelihood that Lexington could bring Camacho into custody in another 90 days. First, Chiz does not explain why he believes that Moonbeam Avenue is "defendant's location." Second, although Lexington points to Camacho's sister-in-law's representation that she would call Chiz when Camacho returned, there is no evidence that the sister-in-law was telling Chiz the truth. Chiz's statement that "[e]verything" the sister-in-law "told us is accurate" is not supported by any evidence showing that the sister-in-law was being truthful. Furthermore, that the sister-in-law was uncomfortable with Chiz talking to her neighbors does not necessarily lead to the conclusion that she would cooperate to help apprehend Camacho. In fact, she may have misinformed Chiz that Camacho was "leaving" for over two months in order to persuade Chiz not to bother her during that period of time.

There is also no evidence supporting Chiz's conclusion that Camacho was present at his workplace. Chiz only stated that Camacho's "distinctive" chair was in the barber shop, however, this does not lead to an inference that Camacho was still working there. Furthermore, although Chiz identified Camacho's mother's location, there is no evidence that Camacho maintained contact with his mother, only Chiz's unsupported conclusion that "the mother [was] protecting the defendant." Lastly, Lexington's argument that the court ignored Chiz's extensive experience in fugitive recovery is also unavailing. Chiz's expertise in tracking down fugitives does constitute evidence that Chiz would be skilled at capturing Camacho, however, it is not sufficient by itself,

without evidence that Chiz had made any progress in locating Camacho, to show a likelihood of success in capturing Camacho in a subsequent 90 days.

Although "we strictly construe the relevant statutory provisions in favor of the surety," "[t]he surety . . . bears the burden of establishing that its case for relief falls within the statutory requirements.  [Citation.]"  (*People v. Ranger Ins. Co.* (2006) 139 Cal.App.4th 1562, 1564.)  As Lexington did not carry its burden of showing good cause in support of its motion, the trial court did not abuse its discretion in denying the motion to extend the forfeiture period.

*DISPOSITION*

The judgment is affirmed.  The County shall recover its costs on appeal.


***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***



                                                    CROSKEY, J.

WE CONCUR:



KLEIN, P. J.



KITCHING, J.

8