Filed 8/12/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE | B251230 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SJ003872) |
| v. | |
| FINANCIAL CASUALTY & SURETY, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Harvey Giss, Judge. Affirmed.

E. Alan Nunez for Defendant and Appellant.

Office of the County Counsel, Brian T. Chu, Principal Deputy County Counsel, for Plaintiff and Respondent.

Financial Casualty & Surety, Inc. (Surety) appeals the trial court's order denying its second motion to further extend the appearance period under Penal Code[1] section 1304.5 or, in the alternative, to toll the running of time on the extended appearance period.  Surety argues the trial court abused its discretion in denying its second extension motion and maintains that the 180-day extension permitted by the statute is to be measured from the date the court granted the first extension, rather than the date the exoneration period would have expired in the absence of an extension.  Surety failed to demonstrate good cause to justify a second extension.  We affirm.

STATUTORY SCHEME

"[T]he 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.'  (*People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 22.)  Thus, when there is a breach of this contract, the bond should be enforced.  (See *People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 675.)"  (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657-658.)

"Section 1305, subdivision (a) requires the trial court to declare a forfeiture of bail when a defendant fails to appear in court without a satisfactory excuse.  The clerk of the court is required to mail notice of the forfeiture to the bail agent within 30 days of the forfeiture.  (§ 1305, subd. (b).)"  (*People v. Granite State Ins. Co.* (2003) 114 Cal.App.4th 758, 762.)  Once a notice of forfeiture is mailed, the surety has 180 days (plus five days for mailing of the notice) to move to vacate the forfeiture and exonerate the bond on the ground the defendant has voluntarily appeared or is in custody following his or her arrest.  (§ 1305, subds. (b), (c)(1).)

---

[1]     All further statutory references are to this code.

Within the 185-day period, section 1305.4 allows the surety to file a motion, based on good cause, for an order extending the 185-day period, "not exceeding 180 days from its order." Section 1305, subdivision (j) provides "a motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 30 day requirement." (§ 1305, subd. (j).)

STANDARD OF REVIEW

A trial court's ruling on a motion for extension under section 1305.4 is reviewed for abuse of discretion. (*County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018, 1028; *People v. Ranger Ins. Co*. (2007) 150 Cal.App.4th 638, 644.) The trial court is said to have abused its discretion when its decision exceeds the bounds of reason, all circumstances being considered. (*People v. Seneca Ins. Co*. (2004) 16 Cal.App.4th 75, 80.) A trial court's ruling based on its interpretation of a statute on uncontested facts is a question of a law subject to de novo review. (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 151.)

FACTUAL AND PROCEDURAL BACKGROUND

On February 29, 2012, Surety posted a bail bond in the amount of $1,240,000 for the release of defendant Oscar Grijalva (Grijalva) in his prosecution for attempted murder and related charges. On August 23, 2012, Grijalva failed to appear in court. The court declared his bail forfeited and issued a bench warrant. A notice of forfeiture was mailed the next day, on August 24, 2012. The 185th day after that mailing was February 25, 2013.

On February 20, 2013, Surety filed its first motion to extend the exoneration period pursuant to section 1305.4. The motion was heard on March 20, 2013. The court granted the motion and ordered the period extended 134 days to August 1, 2013. A second motion to further extend the exoneration period, or in the alternative to toll the running of that period, was filed on August 1, 2013 (23 days before the one-year

3

anniversary of the forfeiture notice mailing), and was heard on August 26, 2013 (the same day the one-year period lapsed). The motion was denied.

Attached to the motion was Surety's investigator, Cesar McGuire's, declaration of the action he had taken to apprehend Grijalva. In sum, the declaration revealed the following efforts between February 19 and July 31, 2013: McGuire contacted Grijalva's relatives on multiple occasions between March and July 2013 to learn of his whereabouts; offered to pay a $100,000 reward to Grijalva's sister if she persuaded Grijalva to turn himself in; raised the reward from $100,000 to $200,000, and posted the updated information on websites and publicized the information in California and Mexico; conducted surveillance at addresses in Taft, Bakersfield, Sylmar, and Arleta, California and interviewed neighbors and local businesses to gather information on Grijalva; followed Grijalva's mother and sister to Rosarito, Baja California, and inquired at the hotel at which they were staying if Grijalva looked familiar; contacted law enforcement in Rosarito; and ran want ads on Facebook throughout Tijuana, Rosarito, Ensenada and Baja California. Unfortunately, none of this resulted in a confirmed sighting of Grijalva, or a verified location.

In June 2013, McGuire learned through a Facebook message that the Harpy gang had a clique close to the Mexican border at Tijuana. Because he had earlier received information that Grijalva may have been a member of this gang, McGuire went to Tijuana and spoke with local law enforcement regarding the Harpy gang. The Tijuana authorities confirmed the presence of the Harpy gang and agreed to contact McGuire if they sighted Grijalva. Again this proved fruitless. It produced no sightings, or additional information.

On July 22, 2013, McGuire received a call from an informant claiming to have information about Grijalva's whereabouts. McGuire met with the informant on July 24, 2013, and was told he knew Grijalva's family personally; Grijalva was "in Tijuana" but it might take "some time to get actual detailed information" because he didn't want it to be

4

"obvious he was gathering information." McGuire's declaration is devoid of a factual foundation for the informant's claimed knowledge Grijalva was in Tijuana.

On July 26, 2013, an unnamed U.S. law enforcement officer who stated that he handles all fugitives outside the U.S. advised McGuire that unnamed law enforcement officials in Mexico claimed they had an informant who knew Grijalva. Again nothing, no sightings or confirmed locations were produced from this 11th hour, third hand information.

During the August 26, 2013, hearing the trial court denied the second motion for an extension, finding a lack of good cause as reflected in the following colloquy:

"[Counsel]: So the court has jurisdiction to grant 180 day extension from the [March] 20th date, which is September 16th, which is a Monday; and I know the court has been operating under the understanding that it can only grant an extension for 365 days total, but that's not what the statute and case law states. It allows the court to grant an extension from a full 180 [days] from the date of the order."

"The Court: That's discretionary. I'll deny that request. There is no good cause –

"[Counsel: The good cause is based on the diligence and likelihood of success, which the declarations amply show that's a very low threshold; and the court's have held it's abuse of discretion to deny an extension with far less details and less success than in this case. I would ask the court to grant the extension to the time period of 9/16. This defendant is very close to being able to be returned to the court.

"The Court: There is no declaration. There is nothing –

"Counsel: There is a declaration.

"The Court: There is no declaration that supports that. They think he's somewhere in Tijuana.

5

"Counsel:     Working with the marshals, who have been identified with the defendant.

"The Court:   Sir, I'll deny your request.  Bail remains forfeited."

In sum, in denying the motion, although the Surety had made considerable efforts to locate Grijalva, the trial court did not find based on the information provided there was a reasonable likelihood Grijalva would be apprehended if an extension were granted. "They think he's somewhere in Tijuana" was not enough.

Surety timely filed a notice of appeal.


DISCUSSION

1. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING SURETY FAILED TO SHOW GOOD CAUSE TO EXTEND THE APPEARANCE PERIOD A SECOND TIME AFTER PREVIOUSLY RECEIVING A 134-DAY EXTENSION.

At any time within the 185-day period – referred to as the "appearance" or "exoneration" period – the surety may seek an order extending the period.  "A further extension is not automatic.  [A surety] has to earn additional time by showing good cause." (*People v. Ranger, supra,* 81 Cal.App.4th at p. 681.)  "The court may, if good cause is shown for doing so, order the period extended 'to a time not exceeding 180 days from its order.' (§ 1305.4; see § 1305, subd. (i).)  Where several shorter extensions are granted, the courts have held that section 1305.4 allows 'an extension of no more than 180 days past the 180th day [effectively the 185-day] period set forth in section 1305." (*People v. Taylor Billingslea Bail Bonds* (1999) 74 Cal.App.4th 1193, 1199, 88 Cal.Rptr.2d 713; (*Taylor Billingslea* ); see also *People v. Granite State Ins. Co.* (2003) 114 Cal.App.4th 758, 768, 7 Cal.Rptr.3d 887 (*Granite State* ) ['[w]e agree . . . that the exoneration period can only be extended an additional 180 days once'].)  Once the appearance period has elapsed without the forfeiture having been set aside, the court 'shall enter a summary judgment against each bondsman named in the bond' in the

6

amount of the bond plus costs. (§ 1306, subd. (a).)” (*People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 1377, 1380.)

“Given the underlying policy of avoiding forfeitures in favor of bringing defendants before the court, a trial court, faced with a section 1305.4 motion for extension, should draw all inferences in favor of the surety. [Citation.] The good cause showing under section 1305.4 is a low threshold for the movant. If the surety demonstrates good cause by showing due diligence . . . , a reasonable likelihood of success of capturing the defendant in a subsequent [extension period], and any other relevant circumstances, the court should grant the motion.” (*People v. Accredited Surety & Casualty Co., Inc.* (2006) 137 Cal.App.4th 1349, 1358 (*Accredited*).)

To constitute “good cause” both due diligence and a reasonable likelihood of recapture must be shown. (*County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th at pp. 1028-1029 (*Fairmont*); *Accredited, supra,* 137 Cal.App.4th at p. 1357.) Both are equally important circumstances in determining “good cause.” (*Accredited*, *supra*, at p. 1358.)

Surety argues the showing of “diligent, consistent and reasonable efforts to locate a fugitive is the measure of good cause.” Surety is wrong; more is required.

There are only four published cases interpreting the good cause requirement of section 1305.4: *Fairmont, supra,* 164 Cal.App.4th 1018; *People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676 (*Ranger*), *People v. Alistar Ins. Co.* (2003) 115 Cal.App.4th 122 (*Alistar*), and *Accredited, supra,* 137 Cal.App.4th 1349. Each case considered the likelihood of recapture as part of the circumstances demonstrating good cause, although *Accredited* (*supra,* at p. 1349) and *Fairmont* (*supra,* at p. 1022) were the only cases to do so explicitly.

In *Fairmont*, *supra*, 164 Cal.App.4th 1018, a case factually similar to ours, our colleagues in Division Seven found the facts presented by the surety insufficient to establish good cause to grant an extension. There the investigator’s declaration indicated the pre-investigation unit of Bad Boys Bail Bonds had contacted courts, jails, the

7

defendant's family members, friends, employers and other secondary leads. Those efforts had proved fruitless, and the defendant's case was sent to the skip trace department for research. The investigator had reviewed the file, obtained the defendant's booking photograph and checked the defendant's bench warrant status with the court. He checked daily through various law enforcement websites to see whether the defendant was in custody. He also explained he had telephoned the indemnitor, Juan Carlos Zurita, and left a message. Later, he went to Zurita's home and spoke to him directly. Zurita said he believed the defendant was in Mexico, and promised to call the defendant's wife to get more information. (*Id*., at p. 1022.)

One week later, Zurita called and told the investigator that the defendant's wife had confirmed the defendant was in Mexico. Zurita told the investigator he would call him later with the defendant's telephone number in Mexico, which he failed to do. Thereafter, the investigator conducted periodic surveillance at various local addresses: the defendant's home address when arrested; an alternative home address for the defendant, which had since been torn down; and a residence address for the defendant's son, at which other persons were living. No one at any of these locations had sighted the defendant or knew his current contact information. Three months later, the investigator telephoned Zurita. Zurita advised him the defendant was still living in Mexico. Zurita said another friend, Martin Sanchez, had talked to the defendant in Mexico and the defendant told Sanchez he was planning to return to the United States to resolve the case. The investigator declared that with Sanchez's assistance, Zurita was either going to learn the defendant's location in Mexico or find out when the defendant planned to return to this country. The investigator concluded his declaration with his "opinion, that if granted additional time, in light of the new information obtained, and with the assistance of [Zurita] and the informant, the defendant will be apprehended and surrendered to the court." (*Fairmont*, *supra*, 164 Cal.App.4th at pp. 1022-1023.)

At the hearing on Fairmont's motion to extend time, the prosecutor did not oppose Fairmont's request because he did not consider it "that unreasonable." (*Fairmont, supra,*

8

at p. 1023.) The court nevertheless denied the motion, explaining, based on "what's been provided the court, I don't really believe an extension of time will necessarily assist bails [sic] bonds in finding [the defendant]. Even based on the bails [sic] bonds' declaration, it appears that [the defendant] is in Mexico, avoiding this case, knowing that there's a warrant out for his arrest." The trial court entered summary judgment against Fairmont which was affirmed on appeal. (*Fairmont*, *supra*, 164 Cal.App.4th at p. 1023.)

In *Ranger, supra,* 81 Cal.App.4th 676, the investigator's declaration indicated he had located a positive address for the defendant in Rosarito, Mexico, and that the defendant was a member of a band. The declaration contained no explanation of how the investigator learned or verified this information. Because of the paucity of information, the appellate court found the surety had not demonstrated good cause to have the time extended. The court held a showing of good cause "means an explanation of what efforts [the surety] made to locate [the defendant] during the initial 180 days, and why such efforts were unsuccessful." However, in reaching this determination, the court also considered the fact that the statement did not indicate how the investigator had located defendant, how he knew he had a bona fide address or the significance of defendant's membership in a band. Without these facts, the court could draw no reasonable inference about the likelihood of recapturing defendant. Thus, in considering the lack of these facts, the court concluded there was an absence of good cause. (*Id.* at pp. 678-682.)

In *Alistar, supra,* 115 Cal.App.4th 122, the investigator had found a new address for the defendant and obtained the help of local police. The conduct of the defendant's family members indicated he was in the area and that they were in contact with him. The investigator had a confirmed address for the defendant's sister. The defendant's brother called him and offered to pay the bond. The appellate court considered the fact that the agent had cooperation from the family and good reason to believe the defendant was currently in a particular geographic area. These facts allowed the court to draw the reasonable inference that, with an extension of time, the defendant was likely to be recaptured. (*Id.* at pp. 128-129.)

9

In *Accredited, supra,* 137 Cal.App.4th 1349, the Court of Appeal found an abuse of discretion in the denial of the surety's section 1305.4 motion because the investigator knew where the defendant resided at various times, with whom he associated, and what actions he had taken. He learned when the defendant fled to Illinois and was able to confirm that information. He learned when the defendant returned to Sacramento. He discovered the identities of people who were helping the defendant and where they lived. He had a long-term relationship with both defendant and his family. The defendant's family was actively cooperating with the investigator to bring the defendant to court. The appellate court found the surety had demonstrated good cause because the declaration provided facts from which a court could reasonably infer that an extension of time would serve the purpose of returning the defendant to court. (*Id.* at pp. 1353-1354, 1359.)

By contrast, in this case the bail agent had been consistently unable to gather verifiable information about Grijalva or his whereabouts. Much of the information he obtained was false or proved fruitless. Despite his conversations with some members of Grijalva's family, it appears none were cooperating or had the slightest idea where Grijalva was, where he was likely to be or with whom. Not only had Grijalva's trail grown cold, it was nonexistent.

In both *Alistar, supra,* 115 Cal.App.4th 122 and *Accredited, supra,* 137 Cal.App.4th 1349 the investigator or bail agent was consistently able to gather information about the defendant and his whereabouts. Further, they were able to provide information that indicated they had a general idea of where the defendant might be and had prospects for obtaining additional information which would eventually lead to his recapture. The existence of this factual information gave rise to an inference there was a reasonable likelihood of capturing the defendant, and is what distinguishes those cases from the one before us. In *Accredited* and *Alistar,* there were verifiable facts from which reasonable inferences about the likelihood of capture could be drawn. In this case there are no such facts.

10

A showing of a reasonable likelihood of recapture is an important circumstance to be considered in determining good cause for an extension. Although the good cause showing under section 1305.4 is low, it is not non-existent. (*Accredited, supra,* 137 Cal.App.4th at p. 1358.) Simply, it was not met in this case.

We strictly construe the relevant statutory provisions in favor of the surety, but it is the surety who bears the burden of establishing that it falls within the statutory requirements for relief. (*People v. Ranger, supra,* 139 Cal.App.4th at p. 1564.) As Surety failed to carry its burden, the trial court did not abuse its discretion in denying the second motion to extend the appearance period.

Surety's central argument in its brief on appeal is that the trial court erred in denying the requested relief based on its mistaken belief it lacked discretionary authority to further extend the extension period: "The trial court here did not fault the surety for the efforts made to locate the defendant. Rather, it was under the erroneous impression that the 'year has run out.'" Surety then argues that, at the time the court ordered the initial extension of the appearance period on March 20, 2013, it was authorized to extend the period until September 16, 2013, that is, 180 days from the date of its prior order. Thus, in its second extension request, Surety sought to obtain the additional 46 days which it claims the court was authorized to grant on March 20, but did not.

As explained above, we find abundant evidence in the record that the trial court denied the second extension motion based on its conclusion that Surety had failed to establish a reasonable likelihood an additional 46-day extension would result in the return of Grijalva to the court's custody.

We have serious doubt Surety was entitled to an additional 46 days based on relevant case law. In *Taylor Billingslea, supra,* 74 Cal.App.4th 1193 the trial court had previously granted several extensions of the appearance period. On the day before the one-year anniversary of the mailing of the notice of bond forfeiture, the trial court denied the surety's request for an additional seven-day extension, stating there was "no authority in either case law or the statute that would permit me to extend the tolling period for

11

more th[a]n 180 days." (*Id.* at p. 1197.) Division Four of this Court affirmed that ruling. After granting that "[t]he language in section 1305.4 is somewhat ambiguous," the appellate court reviewed the legislative history of the statute. It concluded, "Guided by the language of the statute and the explanation of its provisions provided by the legislative counsel, we are of the opinion that the Legislature intended section 1305.4 to allow an extension of no more than 180 days past the 180-day [now 185-day] period set forth in section 1305." (*Id.* at p. 1199.) Subsequent cases have cited *Taylor Billingslea* in support of the proposition that the maximum period during which a surety may vacate the forfeiture is 365 days from the date of mailing of the notice of forfeiture. (See, for example, *People v. Granite State Ins. Co., supra,* 114 Cal.App.4th at p. 768 ["We agree . . . that the exoneration period can only be extended an additional 180 days once."]; *People v. Bankers Ins. Co., supra,* 182 Cal.App.4th at p. 1382 ["[T]he statute allows an extension of the appearance period 'of no more than 180 days' past the 185-day period provided by section 1305"]; *People v. Accredited Surety and Casualty Co., Inc.* (2013) 220 Cal.App.4th 1137.)

In the last cited case, *People v. Accredited Surety and Casualty Co., Inc., supra,* 220 Cal.App.4th 1137, a notice of bail forfeiture was mailed to the surety on January 18, 2011. On July 22, 2011, 185 days later, the surety filed a motion to extend the appearance period pursuant to section 1305.4, which motion was set for hearing on August 5, 2011. The People conceded that the extension request was supported by good cause, and "'suggested that the statutory deadline should be extended in this matter for 180 days from the date of the order purporting to extend the deadline to January 31, 2012.'" (*Id.* at p. 1141.)

On April 26, 2012, summary judgment was entered on the forfeiture. Contending that the extended exoneration period authorized by statute expired no later than January 18, 2012 (365 days after service the notice of forfeiture), the surety challenged the validity of the summary judgment, claiming that it was entered beyond the 90-day

12

period authorized by section 1306, subdivision (c)[2] and was therefore void. In response, the People maintained that the trial court's extension of the appearance period to January 31, 2012 was proper as that date was within 180 days of the court's August 5, 2011 extension order. Citing *Taylor Billingslea, supra,* 74 Cal.App.4th 1193, *People v. Granite, supra,* 114 Cal.App.4th 758 and *People v. Bankers Inc. Co., supra,* 182 Cal.App.4th 1377, the Court of Appeal rejected this analysis: "All of the cases that have addressed the ambiguity in section 1305.4 have concluded that this is not a correct reading of the statute." (*Id.* at p. 1147.) Consequently, the court concluded that, "[u]nder the construction of section 1305.4 adopted by every court that has thus far considered the question, the summary judgment in the present case was entered after the expiration of the 90-day time period permitted by section 1305, subdivision (c)." (*People v. Accredited Surety and Casualty Co., Inc., supra,* 220 Cal.App.4th at p. 1149.) Thus, this case holds that the 180-day extension authorized by section 1305.4 is to be measured from the date the exoneration period would have expired in the absence of an extension, rather than from the date the court granted the extension; or in other words, 365 days from the mailing of the notice of forfeiture.

Without explicitly repudiating this holding, our colleagues in Division Four recently came to the opposite conclusion in *County of Los Angeles v. Williamsburg* (2015) 235 Cal.App.4th 944 ("*Williamsburg*"). In that case, a notice of bail forfeiture was mailed to the surety on July 23, 2012, giving the surety until January 24, 2013 to produce the defendant. On January 22, 2013, the surety moved to extend the appearance period pursuant to section 1305.4; the motion was heard on February 1, 2013, and the appearance period was extended to July 20, 2013. The surety filed a second motion to extend the appearance period on July 22, 2013 (the first court day after July 20, 2013),

---

[2]     Section 1306, subdivision (a) provides that when the exoneration period has lapsed without the forfeiture being set aside, the trial court shall enter summary judgment in the amount of the bond, plus costs. Subdivision (c) of that section provides that in the event "summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."

with hearing set for August 11, 2013. The trial court denied the motion without a hearing on July 22, 2013. While the issue on appeal was simply whether the surety had a statutory right to a hearing on its extension motion, the court explained in a footnote in dicta that the "plain text" of section 1305.4 "clearly states that any extension runs from the date the court issues an order granting an extension." In reaching this conclusion the court cited a nine-word paraphrase contained in *People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th 653, 658 (*American Contractors*), "'[T]he trial court may . . . extend the period by no more than 180 days *from the date the trial court orders the extension*, provided that the surety files its motion before the original 185-day appearance period expires and demonstrates good cause for the extension. [Citations.]' Emphasis added.)" (*Williamsburg, supra,* at p. 951, fn. 7, underscore added.) As our discussion makes clear, we disagree with the dicta of the *Williamsburg* court.

*American Contractors, supra,* 33 Cal.4th at pp. 662-663, held the premature entry of summary judgment following a bail forfeiture renders the judgment voidable, not void. In dicta, in the introduction to the opinion, the Supreme Court described in general terms the process by which a surety may extend the appearance period: "[T]he trial court may . . . extend the period by no more than 180 days from the date the trial court orders *the extension* . . . ." (*Id.,* at p. 658, emphasis added.) Section 1305.4 actually states the court may order the appearance period "extended to a time not exceeding 180 days *from its order*" (emphasis added.) The gravamen of the Supreme Court holding, premature entry of summary judgment renders the judgment voidable, not void, did not require an analysis of the meaning of the phrase "from its order" in section 1305.4. Therefore the opinion is devoid of any analysis of whether "from its order" means 180 days from the last day of the appearance period, or 180 days from the date of a subsequent order extending the appearance period.

2. THE TOLLING PROVISION OF SECTION 1305, SUBDIVISION (H) DOES NOT APPLY TO THE FACTS OF THIS CASE.

14

Surety also contends that it was entitled to a tolling of the appearance period under section 1305, subdivision (h).  We do not agree.

Subdivision (g) of section 1305 states:  "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."  (§ 1305, subd. (g).)  Subdivision (h) of the statute provides:  "In cases arising under subdivision (g), if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, and the prosecuting agency agrees to the tolling of the 180-day period, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the forfeiture.  The court may order tolling for up to the length of time agreed upon by the parties."  (§ 1305, subd. (h).)

"The geographic scope of section 1305, subdivision (g) is set forth in simple language:  It applies when a defendant is detained by bail agents 'beyond the jurisdiction of the state.'  Plainly, this includes situations in which the defendant is located in another country."  (*County of Orange v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 795, 800.)  Thus, in order to benefit from the tolling provision of the statute, Grijalva must have been temporarily detained by the bail agent and have been identified by a law enforcement officer in the foreign jurisdiction.  Neither of these predicates were present at the hearing on Surety's extension request:  The investigator's declaration made clear that Grijalva had never been located, much less detained and identified by a local law enforcement officer.  Relief under subdivision (g), and consequently under subdivision (h), is simply not available when the accused was never temporarily detained by the bail agent in the

15

presence of a local law enforcement officer, or positively identified by that law enforcement officer. (*People v. Accredited Surety & Casualty Co.* (2004) 132 Cal.App.4th 1134, 1146.)

Moreover, tolling can be granted only with the agreement of the prosecutor. While Surety represents that "the prosecuting agency was very interested in having the defendant returned to court, and the extradition deputy was inclined to agree to a tolling," at the extension hearing, it conceded, "I agree that at this moment [the prosecutors] haven't made an agreement to do that." Consequently, as the trial court ruled, the tolling provision of section 1305, subdivision (h) was unavailable in this case.

For the foregoing reasons, we conclude that Surety has failed to establish that the trial court erred in denying its motion to extend the appearance period. Accordingly, we affirm.

### DISPOSITION

The order is affirmed. The County of Los Angeles is awarded costs of appeal.

**CERTIFIED FOR PUBLICATION**

KIRSCHNER, J.[*]

We concur:

MOSK, Acting P. J.

KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16