[No. B199011. Second Dist., Div. Seven. June 18, 2008.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
FAIRMONT SPECIALTY GROUP, Defendant and Appellant.

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, Ralph L. Rosato, Assistant County Counsel, and Doraine F. Meyer, Principal Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**PERLUSS, P. J.**—Fairmont Specialty Group (Fairmont) appeals from the trial court's order denying its motion to extend the 180-day period to vacate a bail bond forfeiture and to exonerate the bond (Pen. Code, § 1305.4).[1] Fairmont contends the trial court lacked jurisdiction to declare bail forfeited because it failed to order bail forfeited on the date of Antonio Vasquez's first nonappearance in the case and abused its discretion in denying the motion because Fairmont demonstrated good cause to justify an extension of time. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Proceedings in the Criminal Matter*

On February 25, 2006 Fairmont posted a $65,000 bond for the release of Vasquez, who had been arrested on drug charges. The bail bond on its face stated Vasquez was to appear in court on March 3, 2006 to answer charges. There is no record of any court proceedings on March 3, 2006.

A criminal complaint was filed against Vasquez on March 7, 2006, and arraignment was scheduled for March 21, 2006. A transcript of a preliminary hearing was apparently filed on March 20, 2006; a minute order reflects Vasquez was not present in court on this day.

Vasquez appeared in court on March 21, 2006; an information was filed; and Vasquez was arraigned on that date. The court continued the case to April 14, 2006, for a pretrial conference. On April 14, 2006 Vasquez appeared as ordered. On defense counsel's motion the court trailed the matter to May 8, 2006 for a further pretrial conference. The case was continued several more times before the court set a trial date of June 28, 2006. On June 28, 2006 Vasquez again appeared and entered a plea of nolo contendere to one of the

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

drug charges. (Health & Saf. Code, § 11379 [transportation, sale or furnishing controlled substances].) The court scheduled the sentencing hearing for August 24, 2006.

On August 24, 2006 Vasquez failed to appear for sentencing. The court declared bail forfeited and issued a no-bail bench warrant for Vasquez's arrest. The clerk of the court mailed notice of bail forfeiture to Fairmont's agent, Bad Boys Bail Bonds, Inc., the next day, August 25, 2006.

By statute, as of August 25, 2006 Fairmont had 180 days (plus five days for mailing) to produce Vasquez or to show he was in custody in order to vacate the forfeiture and exonerate the bail bond. (§ 1305, subd. (c)(1).)[2] The 185th day after mailing the notice of forfeiture was February 26, 2007.

### 2. Fairmont's Motion to Extend the Appearance Period

On February 16, 2007 Fairmont, through Bad Boys Bail Bonds, filed a motion pursuant to section 1305.4[3] to extend the appearance period beyond the statutory 180 days. To establish good cause for the extension, Fairmont included with its motion a declaration from its investigator, Jonathan Vargas, which detailed the efforts he and his colleagues had made to locate Vasquez.

In his declaration Vargas stated the preinvestigation unit of Bad Boys Bail Bonds had contacted courts, jails, Vasquez's family members, friends, employers and other secondary leads. Those efforts had proved fruitless, and Vasquez's case was sent to the skip trace department for research. Investigator Vargas had reviewed the file, obtained Vasquez's booking photograph and checked Vasquez's bench warrant status with the court. Vargas declared he checked daily through various law enforcement Web sites to see whether Vasquez was in custody.

Vargas also explained he had telephoned the indemnitor, Juan Carlos Zurita, and left a message on October 4, 2006. On October 10, 2006 Vargas

---

[2] Section 1305, subdivision (c)(1), provides in part: "If the defendant appears either voluntarily or in custody after surrender or arrest in court within 180 days of the date of forfeiture or within 180 days of the date of mailing of the notice if the notice is required under subdivision (b), the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated . . . ."

[3] Section 1305.4 provides: "Notwithstanding Section 1305, the surety insurer, the bail agent, the surety, or the depositor may file a motion, based upon good cause, for an order extending the 180-day period provided in that section. The motion shall include a declaration or affidavit that states the reasons showing good cause to extend that period. The court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days from its order. A motion may be filed and calendared as provided in subdivision (i) of Section 1305."

telephoned Zurita's workplace and learned Zurita was no longer employed by the entity listed on the bail bond application form. The following day Vargas went to Zurita's home and spoke to him directly. Zurita said he believed Vasquez was in Mexico. Zurita promised to call Vasquez's wife to get more information.

On October 18, 2006 Zurita called Vargas and told him Vasquez's wife had confirmed Vasquez was in Mexico. Zurita told the investigator he would call him later with Vasquez's telephone number in Mexico.

Thereafter, Vargas conducted periodic surveillance at various local addresses: Vasquez's home address when arrested, where other families were now residing; an alternative home address for Vasquez, which had since been torn down; and a residence address for Vasquez's son, in which other persons then lived. No one at any of these locations knew Vasquez's current contact information.

Three months later, on January 25, 2007, Vargas telephoned Zurita. Zurita advised Vargas Vasquez was still living in Mexico. Zurita said another friend, Martin Sanchez, had talked to Vasquez in Mexico and Vasquez told Sanchez he was planning to return to the United States to resolve this case.

Vargas declared that with Sanchez's assistance Zurita was either going to learn Vasquez's location in Mexico or find out when Vasquez planned to return to this country. Vargas concluded his declaration with his "opinion, that if granted additional time, in light of the new information obtained, and with the assistance of the Indemnitor [Zurita] and the informant, the defendant will be apprehended and surrendered to the court."

At the hearing on Fairmont's motion to extend time on March 9, 2007,[4] the prosecutor did not oppose Fairmont's request because he did not consider it "that unreasonable." The court nevertheless denied the motion, explaining, based on "what's been provided the court, I don't really believe an extension of time will necessarily assist bails bonds in finding [Vasquez]. Even based on the bails bonds' declaration, it appears that [Vasquez] is in Mexico, avoiding this case, knowing that there's a warrant out for his arrest." The court entered summary judgment against Fairmont in the amount of $65,000, plus costs.

---

[4] The hearing on Fairmont's motion was timely because Fairmont filed its motion before the 180 days expired and the hearing occurred within 30 days after the appearance period had expired. (§ 1305, subd. (i) ["A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause."].)

## DISCUSSION

1. *Fairmont Failed to Demonstrate the Trial Court Lost Jurisdiction To Declare Bail Forfeited*

Arguing the trial court lost jurisdiction to declare the bail bond forfeited when it failed to declare a forfeiture on March 3, 2006, the date for arraignment set by the jailer on Vasquez's release from custody on the bail bond as authorized by section 1269b, Fairmont contends the bond must be exonerated as a matter of law.[5] Fairmont's argument rests on a fundamentally flawed interpretation of section 1305 and the decision from Division One of this court in *People v. Ranger Ins. Co.* (2006) 145 Cal.App.4th 23 [51 Cal.Rptr.3d 326] (*Ranger*).

■ The basic premise for Fairmont's jurisdiction argument is unexceptional: The trial court's failure to declare a forfeiture upon a defendant's nonappearance without sufficient excuse deprives the court of jurisdiction to later declare a forfeiture. (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 907 [98 Cal.Rptr. 57, 489 P.2d 1385].) And we likewise have no quarrel with Fairmont's assertion that section 1269b, subdivision (a), authorizes a jailer to set a time and place for a defendant's initial appearance on release from custody on bail. Section 1269b, subdivision (h), in turn, specifies that, in the event of a defendant's nonappearance "at the time and in the court so ordered upon his or her release from custody, Sections 1305 and 1306 [governing the court's declaration of a forfeiture on the undertaking and summary judgment against a bondsman on a bail bond] apply." However, Fairmont errs in asserting Vasquez's bail should have been declared forfeited on March 3, 2006, and that, as a consequence, the subsequent forfeiture order is void.

Section 1305, subdivision (a), provides, "A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] (1) Arraignment. [¶] (2) Trial. [¶] (3) Judgment. [¶] (4) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required. [¶] . . . [¶] However, the court shall not have jurisdiction to declare a forfeiture and the bail shall be released of all obligations under the bond if the case is dismissed or if no complaint is filed within 15 days from the date of arraignment."

---

[5] Section 1269b, subdivision (a), provides, among other persons, an "officer in charge of a jail in which an arrested person is held in custody . . . may approve and accept bail in the amount fixed by the warrant of arrest, schedule of bail, or order admitting to bail in cash or surety bond executed by a certified, admitted surety insurer as provided in the Insurance Code, to issue and sign an order for the release of the arrested person, and to set a time and place for the appearance of the arrested person before the appropriate court and give notice thereof."

As our colleagues in Division One explained in *Ranger, supra*, 145 Cal.App.4th 23, the 15-day provision was initially added to former section 1305, subdivision (a), in 1987 (Stats. 1987, ch. 1081, § 1, p. 3660; see *Ranger*, at p. 28) and carried forward in slightly different form in the current version of the statute to eliminate the need for the defendant to appear in court on the first date specified following the posting of bail if no charges have yet been filed against him or her and to avoid the need to post new bail—because the original bail was exonerated or forfeited—when charges are thereafter filed. "The Assembly Committee on Public Safety explained the need for the 15-day time limit: 'This bill provides that no forfeiture shall occur if "no complaint is filed." For a variety of reasons (further investigation to locate a witness or incomplete lab analysis, for example) a complaint may not be filed in a case for some time after a person is arrested and has bailed out. *The district attorney may notify the bondsman that the defendant does not have to appear in court for another two weeks, but by that time a complaint will be filed.* [¶] The defendant benefits by <u>not</u> having his or her bail exonerated before charges are actually filed because there will be no need to reapply for bail and pay additional fees. [¶] The law enforcement [agency] and the court benefit by <u>not</u> having bail exonerated because *if bail is exonerated at the first scheduled court appearance (when charges have not yet been filed)* the district attorney will have to prepare a warrant request, to be signed by a judge, and served by law enforcement in order to resecure the defendant's appearance. The defendant will also risk rearrest on the same charge. [¶] This problem could be alleviated if the bill provided for a fixed time frame after which bail could be automatically exonerated.' " (*Ranger*, at p. 29.)

■ As a practical matter, what the 15-day provision means is, if no criminal complaint has been filed by the date set by the jailer for the first court appearance/arraignment, bail can be neither exonerated nor forfeited on that date. It cannot be exonerated yet because the People are given 15 days by statute to file the complaint. (See *Ranger, supra*, 145 Cal.App.4th at p. 30.) It cannot be forfeited because, if no complaint is filed within 15 days—as was the case in *Ranger*—and the court does not continue the case or otherwise order the defendant to return on a later date, the court has no jurisdiction to declare a forfeiture on the bond. (*Ibid.*)

■ In the case at bar, Vasquez was arrested on February 21, 2006, released on bail on February 25, 2006 and ordered to appear for arraignment on March 3, 2006. However, no criminal complaint had been filed as of March 3, 2006; thus, there was no basis for an arraignment to proceed—and no need for an appearance—on that date. If no complaint had been filed by March 20, 2006 (March 18 was a Saturday), Vasquez's bond would have been exonerated as a matter of law on that date. (*Ranger, supra*, 145 Cal.App.4th at p. 30 ["[b]ecause the complaint was not filed 15 days after January 22, and because the court did not continue the case on January 22 (or

otherwise order [defendant] to return on a later date), the bond was exonerated on February 6"].) Because the court could not know on March 3, 2006 whether exoneration would be required as a matter of law—it would not know until the complaint was actually filed on March 7, 2006—it necessarily could not have declared a forfeiture on that date.

Fairmont's assertion the trial court lost jurisdiction to declare a forfeiture of Vasquez's bail by failing to do so on March 3, 2006 also improperly relies on the general rule that, in the face of a silent record, a defendant's nonappearance must be presumed to be without sufficient cause to justify a continuance. (See *People v. United Bonding Ins. Co., supra,* 5 Cal.3d at p. 907 ["Court minutes which fail to disclose that the court has expressly excused a nonappearance on a record which is silent as to a defendant's reasons therefor, will require a reviewing court to conclude that a nonappearance was without sufficient excuse and that the right to declare a forfeiture not having been exercised was foreclosed. An excused nonappearance, accordingly, should be expressly reflected in the minutes."]; see also *People v. American Bankers Ins. Co.* (1989) 215 Cal.App.3d 1363, 1370 [264 Cal.Rptr. 152] [record failed to show court expressly excused defendant's nonappearance; failure to declare bail forfeited at this initial nonappearance foreclosed right to do so at later date].)

We have no reason to disagree with this well-established principle; and we similarly accept that, when a defendant fails to make a required appearance, "the trial court is obligated to create a record supporting its decision to grant a continuance." (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 718 [61 Cal.Rptr.3d 689, 161 P.3d 198].) However, our situation is quite different. This is a "no record" case, not a "silent record" case. The record on appeal contains nothing at all about March 3, 2006. There is simply no record of any sort for the day—no minute order reflecting the court's orders; no indication of anyone's appearance. (See *id.* at pp. 709, 715–716 ["some events that occur in open court simply are not recorded by a reporter or memorialized by a court clerk"; in the face of a silent record regarding the requirement of declaring bail forfeited in open court, an appellate court will presume the trial court performed its duty and acted in the lawful exercise of its jurisdiction].) Thus, even were we to read section 1305, subdivision (a), as Fairmont does, to accept its jurisdictional argument we would need to presume—without any evidentiary support—Vasquez failed to appear as directed; no sufficient excuse was proffered to continue the matter; and the court failed to issue any order directing Vasquez's appearance on a later date (notwithstanding the fact he did appear on March 21, 2006 when the arraignment actually occurred). (See *People v. Classified Ins. Corp.* (1985) 164 Cal.App.3d 341, 344, 346–347 [210 Cal.Rptr. 162] [before court can forfeit bail defendant's appearance must be required by a specific court order commanding his or her appearance at date and time certain].)

■ Fairmont, as the party seeking to set aside the forfeiture, has the burden to "establish by competent evidence that its case falls within the four corners of these statutory requirements." (*People v. American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 354 [5 Cal.Rptr.2d 620]; see *People v. American Bankers Ins. Co., supra,* 215 Cal.App.3d at p. 1369 ["[w]hen an appeal is on the judgment roll, error must be affirmatively shown by the record"].) Fairmont has failed to satisfy its burden of establishing that Vasquez did not appear at his first required appearance and, as a result, that the trial court lost jurisdiction to later declare bail forfeited.

2. *The Trial Court Did Not Abuse Its Discretion in Concluding Fairmont Failed to Show Good Cause to Extend the Appearance Period*

a. *General principles and standard of review*

■ Within 180 days of the forfeiture of a bail bond (plus five days for mailing of the notice), the surety may seek to have the order of forfeiture vacated and the bond exonerated on the ground the defendant has voluntarily appeared or is in custody following his or her arrest. (§ 1305, subd. (c)(1).) Section 1305.4 allows the surety to file a motion, based on good cause, for an order extending the 180-day period.

"A further extension is not automatic. [A surety] has to earn any additional time by a showing of good cause. That means an explanation of what efforts [the surety] made to locate [defendant] during the initial 180 days, and why such efforts were unsuccessful." (*People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 681 [96 Cal.Rptr.2d 892].) "Efforts by a surety during the first 180 days might not always translate into good cause for an extension if it is unclear that a defendant will likely be captured given more time. While the *Ranger* court was concerned that a surety would sit on its hands for 180 days and then come to court looking for an extension ([*People v.*] *Ranger* [*Ins. Co.*], *supra,* 81 Cal.App.4th at p. 682), neither can the surety be entitled to another 180 days simply by demonstrating it exerted some effort. The inquiry must be prospective as well as retrospective; otherwise, an extension does not serve the statute's policy of returning fleeing defendants to custody. That policy is best served by the surety showing that another 180 days might be productive." (*People v. Accredited Surety & Casualty Co., Inc.* (2006) 137 Cal.App.4th 1349, 1357 [40 Cal.Rptr.3d 892].)

■ "Given the underlying policy of avoiding forfeitures in favor of bringing defendants before the court, a trial court, faced with a section 1305.4 motion for extension, should draw all inferences in favor of the surety. [Citation.] The good cause showing under section 1305.4 is a low threshold

for the movant. If the surety demonstrates good cause by showing due diligence in the initial 180 days, a reasonable likelihood of success of capturing the defendant in a subsequent 180 days, and any other relevant circumstances, the court should grant the motion." (*People v. Accredited Surety & Casualty Co., Inc., supra*, 137 Cal.App.4th at p. 1358.)

The trial court's ruling on a motion for extension of time under section 1305.4 is reviewed for abuse of discretion. (*People v. Ranger Ins. Co.* (2007) 150 Cal.App.4th 638, 644 [59 Cal.Rptr.3d 128]; *People v. Accredited Surety & Casualty Co., Inc., supra*, 137 Cal.App.4th at p. 1357; *People v. Alistar Ins. Co.* (2003) 115 Cal.App.4th 122, 127 [9 Cal.Rptr.3d 497]; *People v. Ranger Ins. Co., supra*, 81 Cal.App.4th at pp. 679–680.)

> b. *Fairmont failed to demonstrate good cause for an extension of time*

In *People v. Ranger Ins. Co., supra*, 81 Cal.App.4th 676, the first decision to analyze the good cause showing required by section 1305.4 to extend the appearance period, the investigator for the surety declared he had a " 'positive address' " for the defendant in " 'Rosarritos, Baja California,' " and added the defendant was a member of a band named " 'Fortaleza Nortena De Tijuana.' " (*Ranger*, at p. 678.) The court found this showing insufficient, explaining the investigator did not state what efforts had been made to find the defendant, when they were made, when the investigator received the file, nor how the investigator learned the defendant was in Mexico. The court pointed out the investigator had also failed to provide any reasons for believing the address he had received for the defendant was either accurate or still valid. (*Id.* at p. 682.) In view of the difficulty of extraditing Mexican citizens to the United States, the fact the defendant might have been located in Mexico, the court stated, did not in itself constitute good cause to extend time. (*Id.* at p. 682, fn. 6.) The court admonished, "We do not view section 1305.4 as giving a surety carte blanche to sit on its hands for six months and then come running into court at the last minute with a bare-bones declaration that leaves huge gaps in the facts, and expect a trial court to simply roll over and give an extension." (*Id.* at p. 682.)

In *People v. Alistar Ins. Co., supra*, 115 Cal.App.4th 122, in contrast, the Court of Appeal found it was an abuse of discretion not to grant the surety's motion to extend time. The investigator had submitted a relatively detailed declaration describing the extensive efforts that had been made to locate the defendant. (*Id.* at p. 128.) The *Alistar* court concluded the surety had provided sufficient evidence of its past efforts to locate the defendant and the likelihood of the defendant's recapture to make it an abuse of discretion for the trial court to refuse to grant the surety's motion to extend time. (*Id.* at

pp. 128–129.) Similarly, in *People v. Accredited Surety & Casualty Co., Inc., supra,* 137 Cal.App.4th 1349, the appellate court found it was an abuse of discretion to deny the surety's motion to extend time when the investigator's declaration demonstrated a likelihood of the defendant's recapture if given more time. In addition to explaining his past efforts to locate the defendant, the investigator declared the defendant's family was actively cooperating with him, the defendant had few places to go, and he felt confident he could return the defendant to custody in another 180 days. (*Id.* at p. 1359.) The *Accredited* court concluded the surety had shown both due diligence in its past efforts and, prospectively, a reasonable likelihood of recapture.

Fairmont's showing of good cause in this case is considerably more substantial than the minimal showing in *Ranger.* However, Fairmont fails to demonstrate either the diligence or the likelihood of success in apprehending Vasquez if an extension were granted that existed in both *Alistar* and *Accredited.*

Fairmont was informed Vasquez was in Mexico in mid-October 2006. Yet Vargas did nothing with this information and made no further efforts to secure an address or a telephone number for Vasquez in Mexico until late January 2007. Nothing in Vargas's declaration suggests he ever interviewed Vasquez's wife or even asked for her address or telephone number to seek more information about Vasquez's whereabouts. Instead of pursuing this potential lead, Vargas seemingly ignored it and instead conducted surveillance at local addresses the preinvestigation unit had already determined were not productive.

Nor does Vargas's declaration contain facts suggesting a reasonable likelihood of capture if given more time. The fact a mutual friend of Vasquez's and Zurita's (the indemnitor) had been in telephone contact with Vasquez in Mexico is not enough. It simply reconfirmed Vasquez was in Mexico—a fact Vargas had learned months before. Nonetheless, this telephone call was the best new information the indemnitor could offer Vargas. This single item is too insubstantial to create an inference of a reasonable likelihood of capturing Vasquez if Fairmont were granted an extension of time. (See *People v. Accredited Surety & Casualty Co., Inc., supra,* 137 Cal.App.4th at p. 1358.)

On this record we cannot conclude the trial court abused its discretion when it determined Fairmont had failed to demonstrate good cause to warrant an extension of the 180-day appearance period under section 1305.4. (*People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 80 [10 Cal.Rptr.3d 93] [trial court can only be said to have abused its discretion when its decision exceeds the bounds of reason, all circumstances being considered]; see *People v. Ranger Ins. Co., supra,* 150 Cal.App.4th at p. 644.)

## DISPOSITION

The judgment is affirmed. The County of Los Angeles is to recover its costs on appeal.

Woods, J., and Zelon, J., concurred.