Filed 3/26/14  P. v. Seaview Ins. Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>SEAVIEW INSURANCE COMANY,<br><br>  Defendant and Appellant. | B250027<br><br>(Los Angeles County<br>Super. Ct. No. OSJ1538) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Arthur Jean, Jr., Judge.  Affirmed.

Robert Tomlin White and Toni L. Martinson for Defendant and Appellant.

Ruben Baeza, Jr., Assistant County Counsel and Joanne Nielsen, Deputy County Counsel for Plaintiff and Respondent.

Defendant and appellant Seaview Insurance Company (Seaview) appeals from entry of summary judgment following the trial court's denial of its motion, under Penal Code section 1305.4, [1] to extend the exoneration period for the bail bond it posted for criminal defendant Jose Luis Soto (Soto). The record discloses no abuse of discretion by the trial court and we therefore affirm the judgment.

## BACKGROUND

On August 8, 2012, Seaview posted a $70,000 bond for the release of Soto, who had been charged with robbery. Soto failed to appear in court on September 28, 2012, and the trial court ordered his bail forfeited. Notice of the forfeiture was mailed to Seaview on October 3, 2012.

Seaview timely moved under section 1305.4 to extend the time for entry of summary judgment on the bail forfeiture by 180 days. The motion was supported by the declaration of investigator Dan Chong (Chong), who averred that he had been looking for Soto since October 1, 2012. Chong declared that he had spoken by telephone with Soto's mother and with his girlfriend, Christina Villafana (Villafana), who were coindemnitors on the bond. Both Villafana and Soto's mother denied any knowledge of Soto's whereabouts and neither returned any of the investigator's subsequent calls. Villafana said she was no longer dating Soto and had not heard from him since he had been released on bail.

Chong stated that he conducted numerous surveillance trips between November 2012 and January 2013 to Soto's listed address in Carson, and to Villafana's listed address in Vista, but he did not observe Soto at either location. Chong undertook searches of courts and jails within California, as well as database and social networking searches, but uncovered no leads as to Soto's location.

Chong also developed two confidential informants who agreed to contact him if they saw Soto. On March 24, 2013, one of the informants called Chong and reported having seen someone resembling Soto at the Vista address. Chong had learned that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

another individual who resembled Soto had moved into the Vista residence, but the informant insisted that he was "100% positive" that the person he saw at the Vista residence was Soto, based on photographs the informant had been given of Soto, along with a description of Soto's tattoos.

Chong traveled to the Vista address that same day but did not see Soto and "for safety concerns . . . determined that contact should not be made at that time." On March 25, 2013, Chong contacted a deputy U.S. Marshal to request assistance in apprehending Soto. As of April 1, 2013, the date Chong signed the declaration, he had not received a response from the U.S. Marshal Service to his request for assistance, nor had he been contacted by the informant regarding any additional sightings of Soto.

At the May 8, 2013 hearing on Seaview's motion to extend the appearance period, Seaview's counsel presented no argument. The trial court denied the motion, stating, "I don't see any hope, counsel, of coming up with anything. The request for an extension is denied. The bond remains forfeited."

Judgment was entered on May 21, 2013, and this appeal followed.

## DISCUSSION

The purpose of bail and its forfeiture is to ensure a criminal defendant's appearance in court and adherence to court orders. (*People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 151.) A bail bond is a contract between the court and a surety whereby the surety promises that a defendant released from custody will appear in court when ordered. If the defendant fails to appear, the surety becomes a debtor for the bond amount. (*Ibid.*)

Bail is forfeited when a defendant fails to appear as ordered before judgment is pronounced. (§ 1305, subd. (a).) If a defendant fails to appear as ordered, a forfeiture of the bail bond may be declared, and a notice of forfeiture must be mailed to the surety. (§ 1305, subd. (b).)

After notice of forfeiture has been mailed, the surety has 180 days to secure the presence of the criminal defendant in court. (§ 1305, subds. (b)-(c).) Under section 1305.4, the surety may file a motion for an order extending the 180-day period, and the

3

trial court may grant the motion upon a showing of good cause. (§§ 1305, subd. (j), 1305.4.) "'In order to show good cause for its extension, the surety must demonstrate that it diligently attempted to locate and capture the defendant during the initial 180 days.' [Citation.]" (*People v. Ranger Ins. Co.* (2007) 150 Cal.App.4th 638, 644.)

In addition to the surety's diligence, the trial court must also consider whether there is a reasonable likelihood of securing the attendance of the accused. (*People v. Accredited Surety & Casualty Co., Inc.* (2006) 137 Cal.App.4th 1349, 1358.) "'The inquiry must be prospective as well as retrospective; otherwise, an extension does not serve the statute's policy of returning fleeing defendants to custody. That policy is best served by the surety showing that another 180 days might be productive.' [Citation.]" (*County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018, 1027.) The relevant statutory provisions are strictly construed in favor of the surety; however, the surety bears the burden of establishing that it comes within the statutory requirements for relief. (*People v. Ranger Ins. Co.* (2006) 139 Cal.App.4th 1562, 1564.)

The trial court's denial of a motion to extend the 180-day exoneration period is reviewed under the abuse of discretion standard. (*People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 679.) "[S]uch abuse occurs only where the court's decision '"exceeds the bounds of reason, all circumstances being considered. [Citation.]"' [Citation.]" (*Id.* at pp. 679-680.)

Seaview contends the trial court abused its discretion by denying the request to extend the 180-day exoneration period because it provided a detailed account of its investigative efforts to locate Soto, as well as the "professional opinion" of its investigator that Soto would be apprehended. Even if the investigator's declaration has demonstrated due diligence, there is insufficient evidence to support the second prong of the test for good cause -- a reasonable assurance that the surety would bring Soto into custody within the extension period.

Seaview's investigator Chong conducted surveillance at different locations on several occasions over a three-month period, but he never saw Soto. After initial telephone conversations with Soto's mother and girlfriend, Chong never spoke with

4

either of them again. Although Soto's mother said she would cooperate with Chong in locating Soto, she stopped taking Chong's telephone calls and never contacted him. Villafana said she had not seen Soto since his release.

Chong's "professional opinion" that he would return Soto to the trial court's jurisdiction was based on a single alleged sighting by a confidential informant at the Vista residence on March 24, 2013. The informant's identification was based solely on photographs and descriptions of Soto's tattoos, and its accuracy was questionable given that an individual resembling Soto had apparently moved into the Vista residence. Although Chong traveled to the Vista residence immediately after the informant contacted him, he did not see Soto. Neither Chong nor the informant observed Soto at or near the Vista residence after the initial alleged sighting. Given these circumstances, the trial court did not err by concluding that Seaview did not meet its burden of establishing a reasonable likelihood of securing Soto's attendance. The denial of Seaview's motion to extend the 180-day appearance period was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                              CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

5