Filed 10/3/19 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>    Defendant and Appellant. | D073948<br><br>(Super. Ct. No. 37-2018-00011275-CU-EN-CTL)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 17, 2019 be modified as follows:

1.    On page 4, second sentence of the first full paragraph, the words "The District Attorney" is changed to "County Counsel" so the sentence reads:

> County Counsel filed an opposition, in which it argued that Surety had not fulfilled all of the requirements for exonerating bail by merely locating Juma in Kenya.

2.    On page 5, third sentence of the first paragraph, the words "The District Attorney" is changed to "County Counsel" so the sentence reads:

County Counsel opposed the motion on the same grounds as earlier and also pointed out that an order tolling Surety's period to vacate the forfeiture was not available because the District Attorney would not agree to it.

3.      On page 5, third sentence of the second paragraph, the words "The District Attorney" is changed to "County Counsel" so the sentence reads:

County Counsel filed a supplemental opposition, in which it argued, among other things, that Surety was barred from raising additional grounds for its motion after the expiration of the appearance period.

There is no change in the judgment.

HUFFMAN, Acting P. J.

Copies to:  All parties

2

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>    Defendant and Appellant. | D073948<br><br><br>(Super. Ct. No. 37-2018-00011275-CU-EN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Maureen F. Hallahan and Lorna Alksne, Judges.  Affirmed.


Law Office of John Rorabaugh, John Mark Rorabaugh and Crystal L. Rorabaugh for Defendant and Appellant.

Thomas E. Montgomery, County Counsel and Walter J. de Lorrell, III, Senior Deputy, for Plaintiff and Respondent.

Financial Casualty & Surety, Inc. (Surety), which posted a bail bond on behalf of criminal defendant Abdul Karim Juma, appeals following the trial court's denial of its

motion to vacate the trial court's forfeiture of the bail bond and to exonerate the bail bond following Juma's failure to appear. Surety contends that the trial court lacked jurisdiction to forfeit the bond because (1) it failed to enter an order forfeiting the bond at an earlier hearing at which Juma may not have been present; and (2) on several grounds, the bail agreement was rendered void and was exonerated when the trial court required that Juma waive his Fourth Amendment right against warrantless searches. We conclude that Surety's arguments lack merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On June 23, 2016, Juma was arraigned on charges of mayhem (Pen. Code, § 203),[1] assault with a deadly weapon (§ 245, subd. (a)(1)), and assault likely to produce great bodily injury (§ 245, subd. (a)(4)). Bail was set in the amount of $100,000. On June 26, 2016, Surety posted a $100,000 bail bond for Juma's release from custody. The bond set forth an undertaking from Surety that Juma would appear in court on a specific date, and "will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of probation." The bond provided that if Juma failed to perform the conditions, the court could enter summary judgment against Surety in the amount of $100,000.

After Juma was released on bail, the trial court twice identified specific additional conditions of bail. First, a minute order from July 15, 2016, states that the court ordered

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

that Juma have no contact with the victim of the crime.  Second, the minute order for the August 24, 2016 hearing stated that a "previously ordered" condition of bail requiring Juma to waive his Fourth Amendment rights against warrantless searches (the Fourth Waiver) "continues."[2]

According to the minute orders in the appellate record, Juma appeared for hearings on July 1 and 15 and August 24, 2016.  However, for a hearing held on August 5, 2016, the clerk who filled out the minute order neglected to check the box indicating whether Juma was present, and no reporter's transcript exists for that hearing.  The only indication that Juma may, in fact, have been present in court on August 5, 2016, is the minute order's statement that "distribution" of the order to defense counsel and Juma took place on the date of the hearing.

After having appeared on August 24, 2016, Juma failed to appear for a September 29, 2016 hearing, and the trial court entered an order forfeiting bail.  The notice to Surety of the order stated that the forfeiture would become final in 180 days unless Surety obtained a court order setting aside the forfeiture or tolling the forfeiture statute.

---

[2]     The minute order states that the "previously ordered" Fourth Waiver "continues," but no earlier minute order in the record indicates that the Fourth Waiver condition was previously imposed.  The terms of the Fourth Waiver are described in the minute order as an agreement to "submit person, vehicle, place of residence, property, personal effects to search at any time with or without a warrant, and with or without reasonable cause, when required by a Probation Officer or other law enforcement officer."

3

(§ 1305).[3] The trial court subsequently entered an order extending Surety's deadline to appear to set aside the forfeiture to November 6, 2017.

On September 26, 2017, Surety filed a motion to set aside the forfeiture and exonerate the bail bond, or in the alternative to further extend the period to seek such relief based on the fact that Surety's investigator had located Juma in Kenya and the District Attorney was in the process of deciding whether to extradite Juma. The District Attorney filed an opposition, in which it argued that Surety had not fulfilled all of the requirements for exonerating bail by merely locating Juma in Kenya. Among other things, the applicable statute authorizes exoneration of the forfeiture only if the prosecuting agency has *already* made an election not to extradite the defendant. (§ 1305, subd. (g).)[4] On October 23, 2017, the trial court denied the motion without prejudice.

---

[3] The period in which a surety must seek to vacate a bail forfeiture is often referred to as "the appearance period." (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658.)

[4] Section 1305, subdivision (g) states, "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, *and the prosecuting agency elects not to seek extradition* after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (Italics added.) In February 2018 the District Attorney eventually decided that it would pursue extradition of Juma. Based on that decision, section 1305, subdivision (g) no longer provided a possible ground for Surety to obtain an order vacating forfeiture and exonerating the bond.

On November 6, 2017, Surety filed a second motion to vacate the forfeiture and to exonerate the bond, or in the alternative to toll the period for it to seek to vacate the forfeiture. The motion was based on substantially the same facts as the previous motion, but it updated the facts concerning the District Attorney's continued consideration of whether to seek extradition of Juma and Surety's efforts to provide information to the District Attorney relating to that issue. The District Attorney opposed the motion on the same grounds as earlier and also pointed out that an order tolling Surety's period to vacate the forfeiture was not available because the District Attorney would not agree to it.[5]

On January 9, 2018, prior to the hearing on the motion (but after the appearance period expired on November 6, 2017) Surety filed a "Supplemental Memorandum of Points and Authorities" in support of its motion. The supplemental briefing argued (1) the trial court lost jurisdiction over the bail bond because a minute order indicates that Juma may have failed to appear at an August 5, 2016 hearing, but the trial court did not order bail forfeited for the nonappearance; and (2) the trial court materially and unconstitutionally altered the terms of the bail contract when it imposed the Fourth Waiver as a condition of bail and failed to notify Surety of the additional condition, which had the effect of voiding the bail agreement. The District Attorney filed a supplemental opposition, in which it argued, among other things, that Surety was barred

---

[5]     Section 1305, subdivision (h) provides that in cases where the defendant is located outside the jurisdiction, tolling is available only if "the prosecuting agency agrees to the tolling."

5

from raising additional grounds for its motion after the expiration of the appearance period.

At a hearing held on February 21, 2018, the trial court denied the motion to vacate the forfeiture and to exonerate the bond. The trial court considered and rejected the two arguments set forth in Surety's supplement briefing. On the first issue, the trial court explained that Surety, which had the burden to set forth competent evidence in support of its motion, had not established that Juma failed to appear on August 5, 2016, and thus had not established that the trial court lost jurisdiction over the bail bond by failing to order bail forfeited on that date. On the second issue, the trial court stated that the addition of the Fourth Waiver as a condition of bail did not materially affect the bail contract with Surety and did not "in any way further expose[] [Surety]."

On March 5, 2018, the trial court ordered summary judgment on the bail bond forfeiture, ordering that Surety pay $100,000, along with costs and interest. Surety appeals from the judgment.

## II.

## DISCUSSION

### A. *Surety Did Not Establish That the Trial Court Lost Jurisdiction by Improperly Failing to Order Bail Forfeited on August 5, 2016*

We first consider Surety's argument that the trial court lost jurisdiction over the bail bond when it failed to order bail forfeited on August 5, 2016.[6]

---

6    The People reassert the argument made in the trial court that Surety is barred from raising the issues set forth in its supplemental briefing filed in the trial court on January 9,

6

1.    *Standard of Review*

"We normally review an order denying a motion to set aside the forfeiture of a bail bond for abuse of discretion.  . . .  When, however, the issue is one of statutory construction or contract interpretation, and the evidence is undisputed, we review the order de novo."  (*People v. International Fidelity Ins. Co.* (2017) 11 Cal.App.5th 456, 461 (*International Fidelity 2017*), citation omitted.)

2.    *Applicable Legal Standards*

Under section 1305, subdivision (a)(1), "[w]hen a defendant facing criminal charges is released on bail and fails to appear as ordered or as otherwise required and does not have a sufficient excuse, a trial court must declare the bail bond forfeited."[7]

---

2018, because those issues were raised after the November 6, 2017 deadline to seek to vacate the forfeiture had passed (although they were raised in supplemental briefing in a motion filed *within* the appearance period).  Surety disagrees, arguing that its challenges are based on the trial court's lack of jurisdiction to order a forfeiture of bail, and that a jurisdictional argument, or an argument based on the contention that the trial court's summary judgement is void, may be raised at any time.  Case law supports Surety's position, and we will accordingly proceed to consider the merits of Surety's argument. (*People v. Amwest Surety Ins. Co.* (2004) 125 Cal.App.4th 547, 550, fn. omitted (*Amwest*) ["We conclude the trial court's failure to declare a forfeiture in open court, as mandated by section 1305, subdivision (a), resulted in the court's loss of jurisdiction over the bail bond.  Because the court did not have fundamental jurisdiction when it entered the summary judgment, the judgment was necessarily void, and subject to collateral attack at any time"]; *People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 595-596 [surety's claim that a bail bond was void because of unlawful consideration was a jurisdictional argument that could be raised at any time] (*International Fidelity 2012*).)

7     Section 1305, subdivision (a)(1) provides:  "A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following:  [¶] (A) Arraignment.  [¶] (B) Trial. [¶] (C) Judgment. [¶] (D) Any other occasion prior to the

(*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 707 (*Safety National*).) Further, when, as here, the amount of the bond or money or property deposited exceeds $400, the clerk of the court must also mail notice of the forfeiture to the surety. (§ 1305, subd. (b)(1).) "When [a] trial court fail[s] to declare bail forfeited in open court, no forfeiture occur[s], the bond [is] exonerated, and the court no longer ha[s] jurisdiction to declare a forfeiture" on a later date. (*Amwest*, *supra*, 125 Cal.App.4th at p. 553; see also *People v. Ranger Ins. Co.* (1998) 66 Cal.App.4th 1549, 1555 [the trial court "erred in not forfeiting the bail when defendant failed to appear for trial without sufficient excuse. It follows that the court was without jurisdiction to forfeit the bail several days later . . . ."].) Put simply, "[i]f the court fails to declare a forfeiture *at the time* of the defendant's unexcused absence, it is without jurisdiction to do so later." (*Safety National*, at p. 710.)

As the party seeking to set aside an order forfeiting bail, Surety "has the burden to 'establish by competent evidence that its case falls within the four corners of these statutory requirements.' " (*County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018, 1027 (*Fairmont*).)

> 3.      *Surety Did Not Establish the Trial Court Failed to Forfeit the Bond When It Was Required to Do so*

Here, as we have explained, there is no reporter's transcript for the August 5, 2016 hearing and, due to an apparent oversight in filling out the minute order form, the clerk failed to check *any* box on the line near the top of the form to indicate whether Juma was

---

pronouncement of judgment if the defendant's presence in court is lawfully required. [¶] (E) To surrender himself or herself in execution of the judgment after appeal." There is no dispute that Juma was lawfully required to be present at the August 5, 2016 hearing.

8

"present," "not present," or "failed to appear." Thus, the record of the August 5, 2016 hearing does not indicate conclusively one way or another whether Juma was present.

Surety contends that because the trial court failed to create a record as to whether Juma was present at the August 5, 2016 hearing, we should presume that he was *not* present. Further, Surety argues that if we presume that Juma failed to appear as required at the August 5, 2016 hearing, it follows that we should also presume that the trial court was required to order a bail forfeiture based on Juma's nonappearance. To support its contention that Juma's nonappearance should be presumed in the face of a silent record, Surety relies on case law discussing the effect of a record that is silent on the issue of whether a trial court found a sufficient excuse to continue a hearing, rather than order bail forfeited, when a defendant failed to appear. In that circumstance, when the record is silent "[a] failure to appear is presumed to be without excuse and the burden to prove otherwise is on the party seeking to enforce a later forfeiture." (*People v. Harco National Ins. Co.* (2005) 135 Cal.App.4th 931, 934; see also *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 907 ["Court minutes which fail to disclose that the court has expressly excused a nonappearance on a record which is silent as to a defendant's reasons therefor, will require a reviewing court to conclude that a nonappearance was without sufficient excuse and that the right to declare a forfeiture not having been exercised was foreclosed."].) Surety contends that, similarly, a presumption in its favor should apply here. As we will explain, we reject the argument.

Our Supreme Court has established that although a presumption arises on a silent record that no sufficient excuse existed for a defendant's nonappearance, that presumption

9

does not extend to other circumstances concerning bail forfeiture. Specifically, in *People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704 (*Allegheny*), the Supreme Court addressed the statutory requirement that a trial court declare bail forfeited "in open court." (§ 1305, subd. (a).) The surety argued that because the record was silent as to whether the order was made in open court, it should be presumed that it was *not*, and that the bail forfeiture order was therefore void. (*Allegheny*, at p. 707.) Our Supreme Court rejected the argument. Citing Evidence Code sections 664 and 666, it pointed out "the well-established presumptions that 'official duty has been regularly performed' and that a court (or judge) is 'presumed to have acted in the lawful exercise of its jurisdiction.' " (*Allegheny*, at p. 706.) It also explained that the presumption that " 'a defendant's failure to appear without explanation is presumptively without sufficient excuse' " applied solely to cases where the trial court continues a hearing instead of declaring a forfeiture. (*Id.* at p. 717.) Therefore, our Supreme Court concluded that it "perceive[d] no reason to extend [that] special rule beyond the context it was designed to address or to supplant the general rule, articulated in Evidence Code sections 664 and 666 . . . that a trial court is presumed to have regularly performed its official duty and acted in the lawful exercise of its jurisdiction." (*Id.* at p. 718, citations omitted.)

In this case, as in *Allegheny*, because the silent record does not concern whether a sufficient excuse existed for a defendant's nonappearance, we do not apply any interpretive presumption in favor of Surety. Instead, as in *Allegheny*, the generally applicable rule applies: In the face of a silent record, a trial court "is presumed to have regularly performed its official duty and acted in the lawful exercise of its jurisdiction."

(*Allegheny*, *supra*, 41 Cal.4th at p. 718.) Accordingly, we presume that Juma was present in court on August 5, 2016, and that the trial court was therefore not required to declare a forfeiture. Surety accordingly has not met its burden to establish that Juma failed to appear on August 5, 2016, and that the trial court was required to declare a bail forfeiture on that basis. (See *Fairmont*, *supra*, 164 Cal.App.4th at p. 1027 [when the record did not reflect whether the defendant appeared at a specific hearing, the surety "failed to satisfy its burden of establishing that [the defendant] did not appear at his first required appearance, and, as a result, that the trial court lost jurisdiction to later declare bail forfeited"].)

B.    *The Condition of Bail Requiring Juma to Agree to a Fourth Waiver Did Not Void the Bail Agreement*

In its attempt to establish that the bail agreement was void and therefore unenforceable, Surety makes a series of arguments that focus on the fact that the trial court required Juma to agree to a waiver of his Fourth Amendment rights as a condition of bail. Surety contends (1) the trial court did not have the authority to add bail conditions after the bail bond was posted; (2) the requirement that Juma agree to the Fourth Waiver voided the bail agreement because it was an unconstitutional condition; and (3) the addition of the Fourth Waiver materially altered the terms of the bail agreement, rendering it void. We consider those arguments in turn.

11

1.      *Surety Has Failed to Establish That the Trial Court Lacked Authority to Add Conditions of Bail After the Bail Bond Was Posted*

Surety first argues that the bail agreement is void because the trial court lacked authority to add conditions of bail *after* the bail bond was originally posted.  We reject the argument for two reasons.[8]

First, Surety has not met its burden to establish that the Fourth Waiver was ordered on a date *after* the bail bond was posted.  In arguing that the Fourth Waiver was ordered after the bond was posted, Surety relies on an August 24, 2016 minute order stating that the "previously ordered" Fourth Waiver will "continue[]."  Because the August 24, 2016 minute order states that a Fourth Waiver was "previously ordered," it is possible that the Fourth Waiver was originally ordered at the arraignment on June 23, 2016, when bail was set at $100,000.[9]  No reporter's transcript for the June 23 or the August 24, 2016 hearing appears in the record, and thus Surety has not established that the Fourth Waiver was ordered for the *first time* on August 24, 2016 rather than on June 23, 2016, *before* the bail bond was posted.

---

[8]      Our Supreme Court recently held in *In re Webb* (2019) 7 Cal.5th 270 (*Webb*) that even in the absence of a directly applicable statutory provision, a court may impose reasonable bail conditions.  However, *Webb* does not address whether a court may order bail conditions after a bail bond has been posted.

[9]      We note that the minute order for the June 23, 2016 arraignment states that bail was "increased" to $100,000.  However the record contains no indication of bail being previously ordered or posted.  Thus, the reference to "increased" bail may be a reference to amount indicated in the bail schedule.

Second, even if Surety were able to establish that the Fourth Waiver was added after the bond was posted, it has not cited relevant legal authority for its contention that a court may not add bail conditions after a bond is posted. Surety cites Penal Code section 1289, which provides that "[a]fter a defendant has been admitted to bail upon an indictment or information, the Court in which the charge is pending may, upon good cause shown, either increase or reduce the amount of bail." (§ 1289.) Surety argues that based on this provision, the trial court was permitted to order bail conditions only "upon good cause." (*Ibid*.) However, section 1289 is inapposite because it pertains to "the amount of bail," and says nothing about a limitation on the trial court's authority to order additional bail conditions, such as the Fourth Amendment waiver at issue here. (*Ibid*.) In the absence of any relevant authority, we reject Surety's contention that the trial court was not authorized to order bail conditions after the bond was posted.

2.  *Surety Has Not Established that the Addition of an Unconstitutional Bail Condition Renders the Bail Agreement Void*

Surety's next contention is based on its claim that Juma's constitutional rights were violated when the trial court required a Fourth Amendment waiver as a bail condition. Surety contends that the presence of an unconstitutional condition of bail renders a bail agreement void as to all parties, including the surety.[10]

---

[10]   The People contend that Surety lacks standing to assert a violation of Juma's constitutional rights to establish that the bail agreement was void. We disagree based on the recent analysis in *People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891 (*Accredited*), which we find to be persuasive. *Accredited* rejected a similar challenge to a surety's standing to challenge an unconstitutional condition of bail. Specifically, the issue was whether the trial court violated the defendant's "constitutional rights to due

13

As background to Surety's contention that the Fourth Waiver was an unconstitutional condition of bail, we note that after the briefing of this appeal was completed our Supreme Court decided *Webb*, *supra*, 7 Cal.5th 270.[11]  The issue presented in *Webb* was whether " 'trial courts possess inherent authority to impose reasonable bail conditions related to public safety on felony defendants who are released on monetary bail?' " (*Id*. at p. 273.)  *Webb* held that "trial courts have authority to impose reasonable conditions related to public safety on persons released on bail." (*Id*. at p. 278.)  Because the issue had become moot in the case before it, *Webb* did not "consider in detail the exact contours of this authority." (*Ibid*.)  It stressed, however, that "this authority is 'fairly narrow,' " and that "[a]ny condition must be *reasonable*, and there must be a sufficient nexus between the condition and the protection of public safety."

---

process by failing to consider his ability to pay before setting the bail amount," rendering the bail agreement void. (*Id*. at p. 896.)  *Accredited* explained, "We agree [the surety] would lack standing to assert a violation of [defendant's] constitutional rights at the bail setting hearing.  [The surety], however, is not appealing the order setting bond. In this case, [the surety] is arguing that *as a consequence* of the potential violation of [defendant's] constitutional rights, the bond contract, to which [the surety] is a named party, is invalid.  'At its core, standing concerns a specific party's interest in the outcome of a lawsuit.  [Citations.]  We therefore require a party to show that he or she is sufficiently interested as a prerequisite to deciding, on the merits,' the claims presented by the litigation. (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.)  As a party to the bond contract, [the surety] has standing to raise claims involving its validity. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 965-966; *People v. Badgett* (1995) 10 Cal.4th 330, 353.)  [The surety] has standing because its claim is based on a theory that the constitutional violation rendered the contract itself void. (See *Badgett*, *supra*, at p. 353.)" (*Accredited*, at pp. 896-897.)

11    We afforded the parties the opportunity to provide supplemental briefing on the relevance, if any, of *Webb*, *supra*, 7 Cal.5th 270, and *Accredited*, *supra*, 34 Cal.App.5th 891 to the issues presented in this appeal.

(*Ibid*.)  Although the trial court in *Webb* required "as an additional condition of release, that [the defendant] waive her Fourth Amendment right to be free of warrantless or unreasonable searches" (*id.* at p. 271), *Webb* did not reach the issue of whether that condition of bail was reasonable in the specific case before it or whether such a condition could ever be reasonable.

Although the issue of whether a Fourth Waiver is a reasonable and constitutionally permissible condition of bail has not been decided by our Supreme Court, we need not, and do not, decide the issue to resolve this appeal.[12]  Instead, as we will explain, even assuming for the sake of our analysis that such a condition is unconstitutional, Surety has not established that a trial court's imposition of an unconstitutional bail condition would have the legal effect of rendering the bail agreement void and vitiate the surety's obligation to comply with the terms of the undertaking.

Our analysis of Surety's argument necessarily begins with an examination of the nature of a bail bond contract.  "A [b]ail bond is characterized as a contract between the government and the surety.  . . . ' "In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place.  . . .  If the defendant fails to appear

_____

[12]    Because we do not reach the issue of whether a Fourth Amendment waiver can ever be a constitutionally permissible condition of bail, we do not address the authorities that Surety cites on the merits of that issue, including the Ninth Circuit's opinion in *U.S. v. Scott* (9th Cir. 2006) 450 F.3d 863, which suppressed evidence that was obtained as the result of a warrantless drug test performed on a defendant who was required to agree to waive his Fourth Amendment rights and agree to drug testing as a condition of bail in Nevada state court.

at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond." . . .' . . . The contractual nature of the relationship between the government and the surety leads to the conclusion that the bail order is the offer, and the posting of a bond is the acceptance of that offer." (*International Fidelity 2012*, *supra*, 204 Cal.App.4th at pp. 594-595, citations omitted.)[13]

Surety contends that a requirement of "an unconstitutional condition renders the consideration of the bail contract invalid and the contract void." The sole support that Surety cites for this proposition is *International Fidelity 2012*, *supra*, 204 Cal.App.4th 588. According to Surety, *International Fidelity 2012* holds that "[w]hen a court requires an unlawful term as a condition of a bail bond[,] the entire contract is void." However, *International Fidelity 2012* does not advance Surety's argument because it does not hold that an unconstitutional bail condition renders a bail agreement void and exonerates the surety from any obligation under the agreement. Specifically, in *International Fidelity 2012*, the defendant was originally released on a $35,000 bail bond. (*Id*. at p. 590.) The defendant was later remanded into custody due to outstanding warrants, but the trial court ordered that the defendant would be released if he posted bail in the amount of $100,000.

---

13      A bail bond agreement has also been described as "a contract involving three parties," as it also involves the defendant, who enters into an agreement with the surety that he will be " 'in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty.' " (*People v. Western Ins. Co.* (2013) 213 Cal.App.4th 316, 322 (*Western*).)

(*Ibid*.) The defendant posted the bail amount of $100,000 by using the already-posted $35,000 bond, and then adding a $65,000 bond from a different surety. (*Id*. at pp. 590-591.) When the defendant later failed to appear and bail was forfeited, the surety who issued the $65,000 bond unsuccessfully sought to vacate the forfeiture and exonerate the bond. *International Fidelity 2012* concluded that the $65,000 bond was void and the trial court should have exonerated it. (*Id*. at pp. 595-596.) As *International Fidelity 2012* explained, when the defendant was initially taken into custody for the outstanding warrants, the $35,000 bond was exonerated by operation of law. (*Id*. at p. 594.) Because the $35,000 bond was no longer in force, some of the consideration that the government gave to the surety for the $65,000 bail bond failed. As the court stated, "In this case, the offer (bail order) contained two items of consideration in exchange for the posting of the $65,000 bond. The first was the release of [defendant] from the sheriff's custody and *the second was the extension of the original $35,000 bail bond*. In other words, International Fidelity agreed to issue the $65,000 bond in exchange for the release of [defendant] with the reduction of its risk that came from having the $35,000 bail bond in place. . . . In our view, International Fidelity agreed to post an additional $65,000 of a total of $100,000 bail, and it did not receive the benefit of the additional $35,000 of bail being in place." (*Id*. at p. 595, italics added.) Relying on the rule in Civil Code section 1608 that "if any part of several considerations for a single object is unlawful, 'the entire contract is void' " *International Fidelity 2012* explained that "[i]n this case, part of the consideration for the issuance of the bond was unlawful—the $35,000 could not stay in place while [defendant] was remanded to the custody of the sheriff. As a result, we conclude that the

contract between the state and International Fidelity concerning the $65,000 bond was void." (*Ibid.*)

Based on the foregoing, *International Fidelity 2012* does not stand for the expansive principle for which Surety cites it. Instead of holding, as Surety claims, that "[w]hen a court requires an unlawful term as a condition of a bail bond[,] the entire contract is void," *International Fidelity 2012* simply holds that when there is a failure of some of the consideration that the surety understood to have been given by the government for the bail agreement, the agreement is void.

*International Fidelity 2012* does not apply here because the addition of the Fourth Waiver does not constitute a failure of any of the consideration that the government gave to Surety for the bail agreement. Surety was not promised, as consideration for the bail agreement, that Juma would be released without any bail conditions, or even that he would be released without any *unconstitutional* bail conditions. Thus, the presence of the Fourth Waiver does not serve to void Surety's obligation under the bail agreement based on a failure of consideration.

Thus, in the absence of any authority stating that a surety's obligation under a bail agreement is rendered void when an unconstitutional bail condition is imposed on a defendant, Surety has not met its burden to establish that, were the Fourth Waiver determined to be unconstitutional, it would operate to void the bail agreement.

18

3.  *The Addition of the Fourth Waiver Did Not Materially Alter the Bail Agreement Without the Consent of Surety*

Surety's final contention is that the bail bond was exonerated because the trial court materially altered its terms, without Surety's consent, when it required Juma to agree to the Fourth Waiver as a condition of bail.

In the context of a bail bond, case law establishes that " '[i]f the government materially increases the risk to the surety beyond the express terms of the bond without notice to the surety or the surety's consent, the government violates its contract with the surety, and the surety is entitled to vacation of the forfeiture and exoneration of the bond.' " (*International Fidelity 2017*, *supra*, 11 Cal.App.5th at p. 461.) "When the recognizance of bail is accepted, an implied covenant on the part of the government exists that it will not 'take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.' " (*Id*. at p. 463.) "Accordingly, a surety is discharged from its liability under the bail bond agreement if the government, without the surety's consent or knowledge, materially increases the surety's risks." (*Western*, *supra*, 213 Cal.App.4th at p. 322; see also *People v. Bankers Ins. Co.* (2016) 247 Cal.App.4th 1004, 1011 (*Bankers*) ["We agree . . . that, if the government materially increases the risk to the surety beyond the express terms of the bond without notice to the surety or the surety's consent, the government violates its contract with the surety, and the surety is entitled to vacation of the forfeiture and exoneration of the bond."].)[14]

---

[14]    In arguing that the addition of the Fourth Waiver was a material alteration that exonerates the bond, Surety cites case law arising under Civil Code section 2819, which

19

"[T]he surety has the burden of showing that the bail conditions materially increased its risks."  (*International Fidelity 2017*, *supra*, 11 Cal.App.5th at p. 461.) The question of whether the government materially increased a surety's risk beyond what it accepted in the bond is an issue of contract interpretation that we review de novo. (*Bankers*, *supra,* 247 Cal.App.4th at p. 1011.)

The undertaking set forth in the bail bond was that Surety would guarantee Juma's appearance in court.  Accordingly, our inquiry in assessing whether the Fourth Waiver materially increased Surety's risk is whether the "changed conditions significantly increased defendant's risk of flight."  (*International Fidelity 2017*, *supra*, 11 Cal.App.5th at p. 463; see also *Safety National*, *supra*, 62 Cal.4th at p. 709 [" 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' "].)  Applying this standard, case law has held that when a court changes the conditions of bail to allow a defendant to travel outside the country, that change materially alters a surety's risk that the defendant will not appear in court.

---

applies in general to sureties and guarantors, and states that a surety "is exonerated . . . if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."  (Civ. Code, § 2819.) Surety relies on case law holding that when there is a " ' "material alteration of the terms of the guaranty" ' " the court is not required to decide " ' "whether the alteration benefits or injures the guarantor." ' "  (*ITT Diversified Credit Corp. v. Highlands Ins. Co.* (1987) 191 Cal.App.3d 301, 306.)  According to Surety, we accordingly should not require it to establish that the Fourth Waiver materially *increased its risks*, only that the Fourth Waiver materially altered Juma's obligations under the bail bond agreement.  We reject the argument.  Case law developed specifically in the bail bond context, which we have cited above, requires that to exonerate a bond based on a change in bail conditions, the surety must establish that the change materially increased its risk under the bond.

20

(*Western*, *supra*, 213 Cal.App.4th at p. 325 ["permitting [defendant] to leave the United States materially increased [surety's] risk under the bail bond agreement"].)  In contrast, in *International Fidelity 2017*, the court concluded that the addition of alcohol-related bail conditions did not "undermine[] the primary object of bail—defendant's continuing appearance."  (*International Fidelity 2017*, *supra*, 11 Cal.App.5th at p. 464.)[15]

   *International Fidelity 2017* is the more comparable authority on the issue of whether the Fourth Waiver materially increased Surety's risk.  Although the Fourth Waiver may have to some extent impacted Juma while he was released on bail, just as the alcohol-related conditions in *International Fidelity 2017* impacted the defendant there, nothing about the Fourth Waiver made it more likely that Juma would fail to appear for future court hearings.  Surety has presented no persuasive authority or argument to the contrary.  Accordingly, we conclude that the Fourth Waiver did not serve to exonerate the bond by materially increasing Surety's risk.

---

[15]   The bail conditions imposed in *International Fidelity 2017*, which did not materially alter the surety's risk, required that the defendant (1) not drive during the pendency of the case, (2) attend three Alcoholics Anonymous meetings per week; (3) abstain from alcohol; and (4) and wear a transdermal alcohol monitoring device. (*International Fidelity 2017*, *supra*, 11 Cal.App.5th at p. 459.)

21

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DATO, J.